**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

YOAHJAN LARA FLORES,
*Defendant-Appellant*.

No. 11-50536

D.C. No.
3:10-cr-04083-
WQH-1

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ALFREDO RUBIO LARA,
*Defendant-Appellant*.

No. 11-50539

D.C. No.
3:10-cr-04083-
WQH-3

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ARTURO LARA,
*Defendant-Appellant*.

No. 11-50555

D.C. No.
3:10-cr-04083-
WQH-2

OPINION

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
March 7, 2013—Pasadena, California

Filed August 30, 2013

Before: Richard A. Paez and Paul J. Watford, Circuit
Judges, and Leslie E. Kobayashi, District Judge.[*]

Opinion by Judge Paez

## SUMMARY[**]

### Criminal Law

Vacating sentences and remanding for resentencing for
conspiracy to possess an unregistered firearm, the panel held
that the definition of a missile under 26 U.S.C. § 5845(f) and
U.S.S.G. § 2K2.1(b)(3)(A) is a self-propelled device designed
to deliver an explosive.

The panel concluded that because the 40-mm cartridges
in this case do not qualify as missiles, the district court erred

---

[*] The Honorable Leslie E. Kobayashi, District Judge for the U.S. District
Court for the District of Hawaii, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

in enhancing the defendants' offense levels pursuant to § 2K2.1(b)(3)(A).

## COUNSEL

Ricardo M. Gonzalez, San Diego, California, for Defendant-Appellant Alfredo Lara.

Barbara M. Donovan, Donovan & Donovan, San Diego, California, for Defendant-Appellant Arturo Lara.

Frederick Carroll (argued), San Diego, California, for Defendant-Appellant Yoahjan Flores.

Douglas Keehn (argued), Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee United States of America.

## OPINION

PAEZ, Circuit Judge:

In these consolidated cases, the defendants appeal their sentences following their pleas of guilty to conspiracy to possess an unregistered firearm in violation of 18 U.S.C. § 371 and 26 U.S.C. § 5861(d). They raise a novel question: What is the definition of a missile under U.S.S.G. § 2K2.1(b)(3)(A) and 26 U.S.C. § 5845(f)? We adopt the common meaning of the word missile, in the context of modern weaponry, and hold that the definition of a missile, under the sentencing guidelines, is a self-propelled device

designed to deliver an explosive.[1]    Because the 40-mm cartridges in this case do not qualify as missiles, the district court erred in concluding otherwise and in enhancing the defendants' base offense level by fifteen levels.  We therefore vacate the defendants' sentences and remand for resentencing.

## BACKGROUND

Defendants Arturo Lara, Alfredo Lara, and Yoahjan Lara Flores, after entering into a plea agreement with the government, pled guilty to conspiracy to possess an unregistered firearm in violation of 18 U.S.C. § 371 and 26 U.S.C. § 5861(d).    The charges were based on the following events.

On September 2, 2010, the defendants entered The Gun Shop in El Centro seeking to purchase a grenade launcher. The store owner provided them with the card of an individual who he said might be able to help them.  The card was that of a Bureau of Alcohol, Tobacco, and Firearms (ATF) agent, which was given to The Gun Shop after the agent received a tip that individuals might visit the store inquiring about illegal weapons.  After a series of negotiations by phone and in person with undercover ATF agents, the defendants agreed to meet the agents and purchase a Colt M203 grenade launcher and three 40-mm gold-tipped high explosive dual purpose cartridges (ammunition for the launcher).  Flores and Arturo Lara met the agents in a parking lot on September 29, 2010

---

[1] The complete definition of a missile under U.S.S.G. § 2K2.1(b)(3)(A) and 26 U.S.C. § 5845(f) may also include a guidance system requirement. Because we can resolve these cases without addressing this issue, we leave it for another day.

and exchanged one Colt M203 grenade launcher and three inert 40-mm cartridges for $1,900. The defendants were arrested and indicted.

Before the court sentenced the defendants, the government filed a motion for a fifteen-level upward adjustment for all three defendants, pursuant to U.S.S.G. § 2K2.1(b)(3)(A), which provides for a fifteen-level enhancement if the offense involved a missile, rocket, or device for launching either of those projectiles. Specifically, the government argued that the M203 grenade launcher defendants purchased is a "device for use in launching a . . . missile" because the 40-mm cartridges it launches are missiles. Therefore, although the enhancement was applied based on the launcher, the dispositive question is whether the cartridges are missiles. If they are, the M203 launcher is a device for launching missiles. If they are not, the M203 is not a device for launching missiles. The plea agreements specifically allowed the defendants to appeal the district court's ruling regarding the applicability of § 2K2.1(b)(3)(A).

The facts regarding the characteristics of the M203 grenade launcher and 40-mm cartridges are undisputed. The M203 grenade launcher is capable of launching many different types of cartridges with different purposes. There are smoke rounds, ground marker rounds, illumination rounds, and gas riot control rounds. The cartridges in this case, which the government claims are missiles, are 40-mm high explosive dual purpose (HEDP) cartridges. They are designed to contain between 1.2 and 1.5 ounces of military grade explosive. These cartridges are described by the army ammunition data sheets as rounds "designed to penetrate at least two inches of steel armor at 0 angle of obliquity and inflict personnel casualties in the target area." The cartridges

are armed by the force of the propulsion when they are launched out of the M203; they "must maintain 37,000 revolutions before it's armed at about 18 meters." At that point, they explode upon impact. This makes the cartridges slightly different than hand grenades, which explode a certain number of seconds after they are activated regardless of the force at which they are thrown.

According to the Army Field Manual, the maximum range of the M203 launcher is 400 meters, although the maximum effective range is between 150 and 350 meters depending upon the type of target. Thus, it has a greater range than hand-tossed grenades, which typically can only be thrown between thirty-five and forty meters. A government expert testified that the M203 was designed to help bridge the gap between the range of hand grenades and the long-distance range of 60-mm mortars.

Most importantly for purposes of this opinion, the cartridges are "fixed round[s] of ammunition," which means that the propulsion power of the cartridge is entirely expended when the launcher is fired. The cartridge case stays behind, similar to other types of small arms ammunition like ordinary bullets. In other words, the cartridges are not self-propelled. They also do not contain any type of internal guidance system.

The district court heard the testimony of qualified government and defense experts on the characteristics of missiles, the Colt M203 grenade launcher, and its accompanying cartridges. The court granted the government's motion to apply the fifteen-level upward adjustment and sentenced each defendant to the statutory

maximum sentence of sixty months imprisonment. The defendants timely appealed.

## STANDARD OF REVIEW

A district court's legal interpretation of the guidelines is reviewed de novo. *United States v. Guerrero*, 333 F.3d 1078, 1080 (9th Cir. 2003). Factual findings are reviewed for clear error. *United States v. Riley*, 335 F.3d 919, 925 (9th Cir. 2003). The facts regarding the characteristics of the weapons involved are undisputed. Therefore, the only questions on appeal are what is the definition of a missile under § 2K2.1(b)(3)(A) and whether the 40-mm cartridges meet that definition. Those are questions of law that we review de novo.

## ANALYSIS

Under § 2K2.1(b)(3)(A) of the Sentencing Guidelines, a fifteen-level enhancement applies if the offense involved "a destructive device that is a portable rocket, a missile, or a device for use in launching a portable rocket or a missile." If the offense involves any other "destructive device," a two-level enhancement applies. U.S.S.G. § 2K2.1(b)(3)(B). Both parties agree that the 40-mm cartridges and M203 launcher qualify as "destructive devices" under § 2K2.1(b)(3) but disagree as to whether the cartridges qualify as "missiles," and thus whether the M203 launcher qualifies as a "device for use in launching a . . . missile."

Application note seven to § 2K2.1 makes clear that the term "destructive device" in § 2K2.1(b)(3) refers to a "destructive device" as defined in the National Firearms Act.

U.S.S.G. § 2K2.1 cmt. n.7.   The National Firearms Act defines a "destructive device" as:

> (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.

26 U.S.C. § 5845(f).   The foregoing definition of destructive device in the statute teaches us that in order to be a "destructive device that is a . . . missile" under § 2K2.1(b)(3), the device, *in addition* to having the qualities of a missile, must also have more than one-quarter ounce of explosive or incendiary charge.  § 5845(f) (defining a destructive device as, inter alia, a "missile having an explosive or incendiary charge of more than one-quarter ounce").  This fact, with respect to the cartridges, is also undisputed.   But unfortunately, the statute provides no definition of "missile."

We thus turn to the traditional rules of statutory interpretation.[2] "The interpretation of a statutory provision must begin with the plain meaning of its language." *In re Bonner Mall Partnership*, 2 F.3d 899, 908 (9th Cir. 1993). Therefore, unless defined, words in a statute "will be interpreted as taking their ordinary, contemporary, common meaning." *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012). In determining the "plain meaning" of a word, we may consult dictionary definitions, which we trust to capture the common contemporary understandings of the word. *See Transwestern Pipeline Co., LLC v. 17.19 Acres of Prop. Located in Maricopa Cnty.*, 627 F.3d 1268, 1270 (9th Cir. 2010).

Dictionaries generally provide two separate definitions of missile: one broad and generic definition including all things thrown as weapons and one definition that aligns with our modern usage of the term missile to describe a sophisticated piece of weaponry. *See, e.g.*, *United States v. Helmy*, 951 F.2d 988, 994 (9th Cir. 1991) (concluding that "missiles fall within any common sense definition of 'sophisticated weaponry'"). For example, the Oxford Dictionary defines a missile as: (1) "an object which is forcibly propelled at a target, either by hand or from a mechanical weapon," or (2) "a weapon that is self-propelled or directed by remote control, carrying conventional or nuclear explosive." *Missile*, Oxford Dictionaries Pro, http://english.oxforddictionaries.com/definition/missile (last visited July 29, 2013).

---

[2] We apply the traditional rules of statutory construction when interpreting the sentencing guidelines. *United States v. Gonzalez*, 262 F.3d 867, 869 (9th Cir. 2001).

The generic definition of "an object propelled . . . as a weapon at a target" could include any object—a pencil, a stone, or a coin—so long as it is thrown as a weapon. This definition of missile is clearly inappropriate in the context of the National Firearms Act's classification of "destructive devices." *See Paul Revere Ins. Group v. United States*, 500 F.3d 957, 962 (9th Cir. 2007) ("It is . . . a fundamental canon that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (internal quotation marks omitted)). The category of "destructive device" under the National Firearms Act "was intended to cover the military-type weapons—mines, grenades, bombs, and large-caliber weapons, such as bazookas, mortars, and anti-tank guns." *United States v. Posnjak*, 457 F.2d 1110, 1115 (2d Cir. 1972). The term missile appears in the statute alongside other modern military weapons such as bombs, grenades, rockets, and mines. 26 U.S.C. § 5845(f). Applying the well-established doctrine of noscitur a sociis—the principle that "a word is known by the company it keeps"—we conclude that the definition of missile in the statute should be the modern military definition rather than the overbroad generic definition. *Gustafson v. Alloyd Co., Inc*, 513 U.S. 561, 575 (1995) ("This rule we rely upon to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." (internal quotation marks omitted)).

Modern military definitions of a missile focus on two characteristics: self-propulsion and a guidance system. As discussed above, the Oxford Dictionary defines a missile as "a weapon that is self-propelled or directed by remote control, carrying conventional or nuclear explosive." *Missile*, Oxford Dictionaries Pro, *supra*. Similarly, the Oxford English

Dictionary defines a missile as "a long-distance weapon that is self-propelled, and directed either by remote control or automatically, during part or all of its course." *Missile*, Oxford English Dictionary, http://www.oed.com/view/ Entry/119992?redirectedFrom=missile#eid (last visited July 29, 2013).[3]

International law definitions of the term "missile" are similar to those discussed above. The United Nations 2002 Report on "The Issue of Missiles in All Its Aspects" defines a missile as "an unmanned, self-propelled, self-contained, unrecallable, guided or unguided vehicle designed to deliver a weapon or other payload." U.N. Secretary-General, *The issue of missiles in all its aspects*, ¶ 19, U.N. Doc. A/57/229 (July 23, 2002). Harvard University's Humanitarian Policy and Conflict Research Program's "Manual on International Law Applicable to Air and Missile Warfare" defines a missile as a "self-propelled unmanned weapon[]—launched from aircraft, warships or land-based launchers—that [is] either guided or ballistic." Program on Humanitarian Policy and Conflict Research at Harvard

---

[3] Both the Merriam-Webster and the American Heritage dictionaries also focus on self-propulsion and/or guidance. They both define missile, in the modern military usage, as either a "guided missile" or a "ballistic missile." *Missile*, Merriam-Webster, http://www.merriam-webster.com/ dictionary/missile (last visited July 29, 2013); *Missile*, The American Heritage Dictionary, http://www.ahdictionary.com/word/ search.html?q=missile (last visited July 29, 2013). A guided missile is defined as a "self-propelled missile that can be guided while it is in flight" and a ballistic missile is defined as a "projectile that assumes a free-falling trajectory after an internally guided, self-powered ascent." *Guided Missile*, The American Heritage Dictionary, http://www.ahdictionary.com/ word/ search.html?q=guided+missile (last visited July 29, 2013); *Ballistic Missile*, The American Heritage Dictionary, http://www.ahdictionary.com/ word/search.html?q =ballistic+missile (last visited July 29, 2013).

University, Manual on International Law Applicable to Air and Missile Warfare, 5–6 (2009), *available at* http://ihlresearch.org/amw/HPCRManual.pdf. In sum, every modern military definition of missile we have encountered includes a self-propulsion requirement. Many definitions also suggest that missiles have guidance systems. We therefore hold that the definition of a missile, under U.S.S.G. § 2K2.1(b)(3)(A) and 26 U.S.C. § 5845(f), is a self-propelled device designed to deliver an explosive. We leave the question of whether the definition of a missile under U.S.S.G. § 2K2.1(b)(3)(A) and 26 U.S.C. § 5845(f) should also include a guidance requirement for another day.

The definition of a missile as a self-propelled device is supported by the reason given for the amendment to § 2K2.1(b), which created the fifteen-level enhancement for missiles and rockets, in Appendix C to the guidelines. *See United States v. Laney*, 189 F.3d 954, 959 (9th Cir. 1999) ("Ultimately, the goal [of interpreting the Guidelines] is to ascertain the intent of the drafters." (internal quotation marks omitted)). The "Reason for Amendment" cites man-portable air defense systems (MANPADS) as a prime example of a weapon covered by § 2K2.1(b)(3)(A). U.S.S.G. App. C, Amend. 669 ("This amendment increases that enhancement to 15 levels if the destructive device was a man-portable air defense system (MANPADS), portable rocket, missile, or device used for launching a portable rocket or missile."). MANPADS are shoulder-fired surface-to-air missiles (also known as SAMs), which are undisputedly self-propelled devices with various types of guidance systems. The types of weapons the Commission intended to include in the amendment should be read in light of this example. *See id.* (referring to "MANPADS and similar weapons" and

"MANPADS or similar destructive device[s]" as the devices covered by the amendment).

The record also supports our conclusion that the 40-mm cartridges are not "missiles" as we have defined the term. The record clearly indicates, and the parties do not dispute, that the cartridges are not self-propelled. Rather, the ignition of the propellant forces the munition from the launcher and the projectile travels under its own inertia.

Both the government, in seeking the enhancement, and the district court, in applying it, were undoubtedly motivated by the extreme dangerousness of these weapons, which are "designed to penetrate at least two inches of steel armor," can travel up to 400 meters, and contain 1.2 and 1.5 ounces of military grade explosive. But the guidelines specifically address how district court judges should approach such a situation. Application note seven to § 2K2.1 states:

> In a case in which the cumulative result of the increased base offense level and the enhancement under subsection (b)(3) does not adequately capture the seriousness of the offense because of the type of destructive device involved, the risk to the public welfare, or the risk of death or serious bodily injury that the destructive device created, an upward departure may be warranted.

Therefore, if the district court determines that the danger of the 40-mm cartridges involved in this case merits a higher sentence than one within the guidelines range with only a two-level enhancement under § 2K2.1(b)(3)(B), the district court may depart or vary upward.

CONCLUSION

In sum, we hold that the definition of a missile under 26 U.S.C. § 5845(f) and U.S.S.G. § 2K2.1(b)(3)(A) is a self-propelled device designed to deliver an explosive. Therefore, the district court erred in applying the enhancement to the defendants' sentences because the 40-mm cartridges in this case are not self-propelled weapons. We vacate the defendants' sentences and remand for resentencing. *See United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006) (holding that a material error in calculating the sentencing range, even though the Guidelines are only advisory, is grounds for resentencing).

**VACATED** and **REMANDED** for resentencing.