**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10044 |
| *Plaintiff-Appellee*, | D.C. No. 4:19-cr-02615-CKJ-DTF-1 |
| v. | |
| JOSHUA WILLIAM SCHEU, | ORDER AND AMENDED OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted February 7, 2023
Phoenix, Arizona

Filed August 2, 2023
Amended October 6, 2023

Before: Michael Daly Hawkins, Susan P. Graber, and
Morgan Christen, Circuit Judges.

Order;
Opinion by Judge Hawkins

# SUMMARY[*]

## Criminal Law

The panel denied a petition for panel rehearing and filed an amended opinion affirming a sentence for two counts of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 2241(c), 2246(2), & 1152, in a case in which the district court applied a four-level enhancement under U.S.S.G. § 2A3.1(b)(5) because "the victim was abducted."

The panel noted that the weight which must be accorded to Sentencing Guidelines commentary, or whether the commentary may be considered at all after *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), has become a contentious issue across the circuits. But the panel did not need to delve into the issue in this case, having concluded that the Guideline provision itself is unambiguous and was properly applied by the district court. Interpreting the plain language of the text of § 2A3.1(b)(5), the panel had no difficulty concluding that the victim was "abducted" when the defendant forced her from the roadside where he encountered her into a nearby cornfield to perpetrate the sexual assault.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

J. Ryan Moore (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Federal Public Defender's Office, Tucson, Arizona; for Defendant-Appellant.

Shelley K.G. Clemens (argued) and Corey J. Mantei, Assistant United States Attorneys; Christina M. Cabanillas, Deputy Appellate Chief; Gary M. Restaino, United States Attorney; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

## ORDER

The Opinion filed on August 2, 2023, is replaced by the attached Amended Opinion.

The petition for panel rehearing is denied. No further petitions for rehearing will be accepted.

## OPINION

HAWKINS, Circuit Judge:

Defendant Joshua William Scheu appeals his sentence following a guilty plea to two counts of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 2241(c), 2246(2) & 1152. He contends that the district court misapplied a sentencing enhancement for abduction and thus improperly added four levels to his sentencing range. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

In October 2019, Scheu was indicted on two counts of aggravated sexual abuse of a child for sexual acts of violence committed against a fourteen-year-old Native American girl on the Gila River Indian Community outside of Phoenix, Arizona, in November 2004. Scheu pled guilty without the benefit of a plea agreement.

The Presentence Investigation Report calculated the sentence using the 2004 version of the Guidelines, applied a downward adjustment for acceptance of responsibility, and added a four-level enhancement because "the victim was abducted." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 2A3.1(b)(5). This enhancement increased both ends of the advisory sentencing range by more than six years. Scheu objected, arguing that the abduction enhancement should not be applied because there was no significant change in location during or prior to the assault.

At the sentencing hearing, the government presented the testimony of a former Gila River Police Department

detective who had investigated the case in 2004.[1] The detective testified that the victim and victim's mother said that the victim had been waiting by a dirt berm and water pumping station along 83rd Avenue when the defendant drove by, made a U-turn, parked, and got out of his vehicle. As he approached the victim, she began walking backwards, but Scheu caught up to her, grabbed her arms, and put his hand over her mouth. He then pushed, pulled, dragged and/or moved her approximately 35 to 40 feet into the corner of a nearby cornfield where the sexual assault occurred, and ordered her to lie down and not to scream or cry. The field was adjacent to the road, and the corn was approximately two-and-a-half feet high at the time. Several photographs and a hand-drawn diagram of the crime scene were admitted in evidence.

Overruling Scheu's objection to the enhancement, the district court concluded that the forced movement of the victim from the roadside into the cornfield was sufficient to support the abduction enhancement and noted that the defendant had "physically forced the victim into a cornfield to conceal the assault from public view or detection." The court sentenced Scheu to 210 months of imprisonment and lifetime supervised release.

## STANDARD OF REVIEW

We review de novo the district court's legal interpretation of the Guidelines. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1171 (9th Cir. 2017) (en banc). A court's application of the Guidelines to the facts of a case is

---

[1] The victim died of natural causes in 2020 and was not available to testify at Scheu's sentencing hearing.

reviewed for an abuse of discretion and its factual findings for clear error.  *Id*. at 1170.

## DISCUSSION

The Sentencing Guideline at issue, U.S.S.G. § 2A3.1(b)(5) (2004), provides:

> Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse:
>
> a.  Base Offense Level:       30
> b.  Specific Offense Characteristics
>     . . . .
>     (5) If the victim was abducted, increase by 4 levels.

The application note to this Guideline further provides that the term "abducted" in subsection (b)(5) shall "have the meaning given those terms in Application Note 1 of the Commentary to § 1B1.1."   In turn, the commentary to § 1B1.1 explains:

> "Abducted" means that a victim was forced to accompany an offender to a different location.  For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction.

U.S.S.G. § 1B1.1, cmt. n.1(A) (2004).

Applying the definition in the commentary, the district court found the defendant had forcibly moved the victim from the shoulder of the road into an adjoining cornfield, where he shoved her onto the ground, approximately 35 to 40 feet from the spot where he had initially grabbed her by

the open road.  The district court ruled that this movement was sufficient to demonstrate by clear and convincing evidence that Scheu had forced the victim to accompany him to a different location and applied the four-level enhancement.

## I.

For many years, the leading case on how courts should treat definitions, examples, and other information in the Guideline commentary has been *Stinson v. United States*, 508 U.S. 36 (1993).  *Stinson* concluded that the Sentencing Commission's commentary in the Guidelines manual that interprets or explains a Guideline is binding and that courts must follow it unless it is plainly erroneous, inconsistent with the Guideline provision itself, or violates the Constitution.  *Id*. at 47.  In reaching this conclusion, the Court considered various analogies to other legal areas and ultimately concluded that, although "not precise," the Guideline commentary was much like an agency's interpretation of its own legislative rule (and not like an agency's construction of a federal statute that it administers). *Id.* at 43–45.

Twenty-six years after *Stinson*, the Supreme Court decided *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), which addressed the proper deference to an agency's interpretation of its regulations (in that case, the Board of Veterans' Appeals interpretation of an agency rule in a particular decision).  *Kisor* reaffirmed the existence of, but limited the scope of, "*Auer / Seminole Rock* deference"; the Court explained that "the possibility of deference can arise only if a regulation is genuinely ambiguous" and a court has exhausted all the "traditional tools of construction."  *Id.* at 2414–15 (citation omitted); *see Auer v. Robbins*, 519 U.S.

452 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945).

Since *Kisor* was decided, a circuit split has arisen over whether this more limited deference should apply to the Sentencing Guidelines commentary and application notes. *Compare United States v. Moses*, 23 F.4th 347, 351–58 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 640 (Jan. 9, 2023) (setting forth reasons why *Kisor* did not apply to the Guidelines, and continuing to apply *Stinson*), *with United States v. Riccardi*, 989 F.3d 476, 484–85 (6th Cir. 2021) (applying *Kisor* to the Guidelines and concluding that a court may defer to commentary only if the Guidelines are ambiguous).

Our court recently weighed in on the debate and agreed that the "more demanding deference standard articulated in *Kisor* applies to the Guidelines' commentary." *United States v. Castillo*, 69 F.4th 648, 655 (9th Cir. 2023).  As we explained:

> *Kisor* directly examined and narrowed *Seminole Rock* and *Auer* deference in the context of an administrative agency's interpretation of its own regulation, noting that such deference is not permitted without first finding the regulation ambiguous.  *Stinson* deference is directly grounded in *Seminole Rock* and *Auer* deference. . . . Therefore, to follow *Stinson's* instruction to treat the commentary like an agency's interpretation of its own rule, we must apply *Kisor's* clarification of *Auer* deference to *Stinson*.

> *Id.* at 655–56 (internal quotations and citations omitted).

In any event, as discussed below, we conclude the result in this case is unaffected by this change in analysis.

## II.

We apply "the traditional rules of statutory construction when interpreting the sentencing guidelines." *United States v. Flores*, 729 F.3d 910, 914 n.2 (9th Cir. 2013). "Our interpretation will most often begin and end with the text and structure of the guidelines' provisions themselves." *United States v. Cuevas-Lopez*, 934 F.3d 1056, 1061 (9th Cir. 2019) (citation and internal quotation marks omitted). "In determining the 'plain meaning' of a word, we may consult dictionary definitions, which we trust to capture the common contemporary understandings of the word." *Flores*, 729 F.3d at 914.

Here, the Guideline itself simply provides that "[i]f the victim was abducted, increase by 4 levels." U.S.S.G. § 2A3.1(b)(5). The word "abduct" derives from the Latin "'abduco' to lead away." *Humphrey v. Pope*, 54 P. 847, 848 (Cal 1898). Contemporary dictionary definitions define "abduct" as "to seize and take away (a person) by force," *Merriam Webster Online* (2023), https://www.merriam-webster.com/dictionary/abduct [https://perma.cc/32EU-LC8Y], "to carry off by force," *The American Heritage Dictionary* (2d Coll. Ed. 1991), and "[t]o take (a person) away by force or deception," *The Oxford English Dictionary Online* (2023), https://www.oed.com/view/Entry/212 [https://perma.cc/KJ3L-Z3KX]. *Black's Law Dictionary* similarly defines abduct(ion) as "[t]he act of leading someone away by force or fraudulent persuasion." (9th Ed. 2009). Scheu argues that "abducted" requires a "substantial leading away" and is "akin to protracted custody, captivity, or significant isolation."

The plain meaning of "abducted" is not difficult to discern, and the facts of this case would constitute an abduction under any of these definitions. The defendant encountered, chased, and caught the victim by the side of the open road, and then forced her to accompany him 35 to 40 feet into a nearby cornfield, where the corn was approximately two-and-a-half feet high; he then pushed her down onto the ground so they could not be seen by passing vehicles, ordered her not to scream or cry so no one would come to her aid, and raped her. It can easily be said that the defendant seized the victim and led her away by force, significantly isolating her and holding her in his custody and captivity while he perpetrated the crime.

We note that this interpretation is also consistent with the structure and use of "abducted" as an enhancement in other Guidelines provisions, such as U.S.S.G. § 2B3.1 (robbery) and § 2B3.2 (extortion by force or threat). *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (noting the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (citation and internal quotation marks omitted)). In these Guidelines, there is a lesser, two-level enhancement if the victim was "physically restrained" and a separate, four-level enhancement if the victim was abducted. Unlike abduction, physical restraint does not require any movement of the victim and applies if the victim is simply restrained in place. *See, e.g., United States v. Thompson*, 109 F.3d 639, 641 (9th Cir. 1997) (noting examples such as being tied, bound, or locked up). Applying the abduction enhancement in this case is also completely consistent with the underlying purpose of the enhancement in the sexual assault guideline. As the Eighth Circuit has noted: "Abduction increases the gravity

of sexual assault or other crimes because the perpetrator's ability to isolate the victim increases the likelihood that the victim will be harmed." *United States v. Saknikent,* 30 F.3d 1012, 1013 (8th Cir. 1994).

Employing these "traditional tools of construction," *Kisor*, 139 S. Ct. at 2415 (citation and internal quotation marks omitted), we conclude that the text of § 2A3.1(b)(5) is not ambiguous and that the district court correctly applied the abduction enhancement in this case.

## III.

As we noted above, the weight which may be accorded to the Guidelines' commentary, or whether the commentary may be considered at all post-*Kisor*, has become a contentious issue across the circuits. *See, e.g.*, *Castillo*, 69 F.4th at 660–62 (discussing post-*Kisor* circuit split); *see also United States v. Vargas*, 74 F.4th 673, 690 (5th Cir. 2023) (en banc); *United States v. Rivera*, 76 F.4th 1085, 1089–90 (8th Cir. 2023). We need not delve into this issue in this case, having concluded that the Guideline provision itself is unambiguous and was properly applied by the district court in this case. We do note, however, that our interpretation is entirely consistent with the way in which this Guideline has been applied for many years in numerous other circuits when they were applying the commentary definition pre-*Kisor*.[2] *See e.g.*, *United States v. Whooten*, 279 F.3d 58, 61 (1st Cir. 2002) (abduction enhancement upheld where defendant forced bank employee approximately 65 feet from building into parking lot, but not all the way to getaway vehicle); *United States v. Davis*, 48 F.3d 277, 278–79 (7th Cir. 1993)

---

[2] The commentary defines "abducted" as "forced to accompany an offender to a different location." U.S.S.G. § 1B1.1, cmt. n.1(A) (2004).

(abduction enhancement upheld where defendant forced employee from parking lot into credit union); *United States v. Kills in Water*, 293 F.3d 432, 434 (8th Cir. 2002) (abduction enhancement upheld where defendant picked up, "dragged," and "lifted" victim inside an abandoned trailer after she willingly accompanied him to the trailer's vicinity), *United States v. Hawkins*, 87 F.3d 722, 728 (5th Cir. 1996) (per curiam) (movement at gunpoint 40 to 50 feet between vehicles in the same parking lot sufficient to support the enhancement); *United States v. Hefferon*, 314 F.3d 211, 215 (5th Cir. 2002) (movement of victim from near some trees by a playground to an area behind garbage dumpsters constituted abduction).

## CONCLUSION

Interpreting the plain language of the text of § 2A3.1(b)(5), we have no difficulty concluding that the victim in this case was indeed "abducted" when the defendant forced her from the roadside where he encountered her into a nearby cornfield to perpetrate the sexual assault.  The district court did not abuse its discretion by applying the four-level enhancement.

**AFFIRMED.**