**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> FRANCISCO JAVIER GASCA-RUIZ, *Defendant-Appellant*. | Nos. 14-50342 <br> 14-50343 <br><br> D.C. Nos. <br> 3:14-cr-00958-GPC-1 <br> 3:12-cr-01124-GPC-1 <br><br> OPINION |

Appeals from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted En Banc January 12, 2016
Pasadena, California

Filed April 5, 2017

Before: Sidney R. Thomas, Chief Judge, and Diarmuid F.
O'Scannlain, M. Margaret McKeown, William A. Fletcher,
Ronald M. Gould, Jay S. Bybee, Carlos T. Bea, N. Randy
Smith, Paul J. Watford, Andrew D. Hurwitz, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Watford;
Concurrence by Judge Hurwitz

**SUMMARY**[*]

**Criminal Law**

The en banc court affirmed the district court's sentencing determination in a case this court took en banc to resolve an intra-circuit conflict over the standard of review that applies when this court reviews a district court's application of the United States Sentencing Guidelines to the facts of a given case.

The en banc court held that, as a general rule, a district court's application of the Sentencing Guidelines to the facts of a given case should be reviewed for abuse of discretion. The en banc court wrote that there is at least one exception to the general rule: the determination whether a defendant's prior conviction is for a "crime of violence," as required under some provisions of the Guidelines, remains subject to *de novo* review.

Reviewing *de novo* whether the district court identified the correct legal standard in applying U.S.S.G. § 2L1.1(b)(7)(A) in this case, the en banc court concluded that it did. The en banc court held that in applying § 2L1.1(b)(7)(A) to the undisputed facts of this case, the district court did not abuse its discretion in concluding that the standard for bodily injury had been met.

Judge Hurwitz, joined by Judge W. Fletcher, concurred in part and concurred in the result. He wrote that whether

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

reviewed *de novo* or with deference, the district court's determination was plainly correct, and he would therefore leave for another day the issue of appropriate standard of review.

## COUNSEL

Vincent J. Brunkow (argued) and Ryan V. Fraser, Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Peter Ko (argued), Chief, Appellate Section, Criminal Division; Benjamin J. Katz, Assistant United States Attorney; Laura E. Duffy, United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## OPINION

WATFORD, Circuit Judge:

We took this case en banc to resolve an intra-circuit conflict over the standard of review that applies when we review a district court's application of the United States Sentencing Guidelines to the facts of a given case. We conclude that as a general rule such decisions should be reviewed for abuse of discretion.

I

The defendant in this case, Francisco Gasca-Ruiz, pleaded guilty to transporting undocumented immigrants in violation

of 8 U.S.C. § 1324.  The facts relevant to his sentencing proceeding are undisputed, as they are drawn solely from a Presentence Report whose accuracy neither party challenged.

Gasca-Ruiz was arrested by Border Patrol officers conducting surveillance operations near the United States-Mexico border.  They spotted him driving suspiciously and saw him pick up five passengers.  Some time later, after Gasca-Ruiz pulled over, two of the passengers got out of the car and climbed into the trunk.  When the officers tried to stop Gasca-Ruiz's car, he led them on a high-speed chase during which he ran a red light, almost struck another vehicle, and drove airborne over a drainage ditch.  The chase ended when Gasca-Ruiz blew out the passenger-side tires while attempting to drive over a curb.  Officers apprehended Gasca-Ruiz after a brief foot chase and detained him along with the five passengers in the car.

The sentencing issue raised on appeal centers on the extent of the injuries suffered by one of the passengers trapped in the trunk.  What we know on this subject comes from two paragraphs in the Presentence Report, which we will simply quote in full:

> 13.  The MWs [material witnesses] in the trunk reported their bodies were bouncing around in the trunk compartment.  They further said it was difficult to breathe because the trunk began to fill with different types of fumes burning from the vehicle.  One of the MW's reported he was screaming it was too hot inside and stated he was getting burned.  He informed he pounded on the interior of the trunk, but no one responded.  The MWs said

they were unable to exit the trunk of the vehicle without the assistance from the law enforcement officers.

14.   One of the MWs in the trunk suffered mild lacerations to his fingers from trying to escape and a minor burn on his forearm from the trunk compartment overheating.   His injuries were treated at the U.S. Border Patrol station in El Centro; however, he refused to receive any medical attention.

Based on these facts, the Presentence Report recommended imposing the sentencing enhancement in § 2L1.1(b)(7) of the Sentencing Guidelines.  That provision calls for a two-level increase in the defendant's offense level if any person sustained "bodily injury" as a result of the offense, a four-level increase if "serious bodily injury" resulted, or a six-level increase if "permanent or life-threatening bodily injury" resulted.   U.S.S.G. § 2L1.1(b)(7)(A)–(C). The Presentence Report recommended the two-level increase for "bodily injury," which the Guidelines define as "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  § 1B1.1, comment. n.1(B).  (By way of comparison, the Guidelines define "serious bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."  § 1B1.1, comment. n.1(L).)

Over Gasca-Ruiz's objection, the district court imposed the two-level increase for bodily injury under

§ 2L1.1(b)(7)(A). The court explained that it found the provision applicable because one of the passengers in the trunk sustained "several lacerations on his body and a small burn on his right arm." The court further explained that the passenger "reported it was difficult to breathe because the trunk began to fill with differing types of fumes. He was screaming. It was too hot inside. And he stated he was getting burned." The court sentenced Gasca-Ruiz to 37 months in prison, the high end of the resulting advisory Guidelines range.

On appeal, Gasca-Ruiz contends that the district court improperly imposed the two-level increase for bodily injury. In his view, the mild lacerations and minor burn suffered by the passenger in the trunk are not "significant" injuries, as § 2L1.1(b)(7)(A) requires. In his briefs before the three-judge panel, Gasca-Ruiz urged the court to review the district court's application of § 2L1.1(b)(7)(A) to the facts of his case *de novo*. The government countered that we should review the district court's decision deferentially. Both sides were able to cite cases supporting their respective positions because a longstanding intra-circuit conflict exists on this issue. Some of our cases have said that we review *de novo* a district court's application of the Guidelines to the facts, while other cases have held that guideline-application decisions are reviewed deferentially for abuse of discretion. *See United States v. Staten*, 466 F.3d 708, 713 n.3 (9th Cir. 2006) (noting the conflict).

In most cases, the standard of review does not affect the outcome, which is why many three-judge panels in the past have been able to side-step this issue. *See, e.g.*, *United States v. Tanke*, 743 F.3d 1296, 1306 (9th Cir. 2014); *United States v. Garcia*, 497 F.3d 964, 969 (9th Cir. 2007). The three-judge

panel in this case, however, thought that the standard of review could be dispositive. The panel *sua sponte* called for the case to be heard en banc, and a majority of the judges in active service agreed to do so in order to resolve the intra-circuit conflict over the proper standard of review.[1]

## II

A district court's decision to apply (or not apply) a particular provision of the Sentencing Guidelines involves three distinct components. First, the district court must identify the correct legal standard, a task that typically entails selecting and properly interpreting the right Guidelines provision. Second, the court must find the relevant historical facts, meaning the facts that answer primarily "what happened" types of questions (who, what, when, where, why, etc.). And third, the court must apply the appropriate guideline to the facts of the case—that is, decide whether the set of historical facts as found satisfies the governing legal standard.

Our cases uniformly hold that we review the district court's identification of the correct legal standard *de novo* and the district court's factual findings for clear error. An intra-circuit conflict has arisen only with respect to the third component: application of the Guidelines to the facts. Most of our cases have held that we review guideline-application

---

[1] Gasca-Ruiz also raises a second, completely separate issue concerning the alleged denial of his right to allocution at sentencing. Because Gasca-Ruiz was afforded an adequate opportunity to address the court before the sentence was imposed, we summarily reject his arguments on this issue. *See United States v. Allen*, 157 F.3d 661, 666 (9th Cir. 1998).

decisions for abuse of discretion, but some of our cases state that we review such decisions *de novo*.

We conclude that, as a general rule, a district court's application of the Sentencing Guidelines to the facts of a given case should be reviewed for abuse of discretion. To the extent our prior cases state otherwise, they are overruled. We will explain in a moment our reasons for reaching this conclusion, but it will help to clarify at the outset the distinction between the first and third components mentioned above—*identifying* the correct legal standard on the one hand, and *applying* that standard to the facts of a given case on the other.[2]

## A

In most Sentencing Guidelines appeals, the applicable legal standard is supplied by the Guidelines themselves. So to determine whether the district court identified the correct legal standard, we review whether the court selected the right Guidelines provision in the first instance and whether the court correctly interpreted the meaning of that provision. To arrive at the governing legal standard, district courts usually need to do little more than consult the text of the applicable guideline and its accompanying commentary. Sometimes, though, when confronted with a factual scenario not explicitly

---

[2] We have not always been vigilant in keeping these two components distinct. For example, in many of the cases in which we have stated that a district court's "application" of the Guidelines is reviewed *de novo*, what we actually reviewed was whether the district court identified the correct legal standard. *See, e.g.*, *United States v. Crawford*, 372 F.3d 1048, 1053, 1061–62 (9th Cir. 2004) (en banc) (vacating the defendant's sentence because the district court did not apply the legal standard established by circuit precedent).

addressed by the guideline's text or commentary (or by binding precedent construing them), district courts may need to engage in further "norm elaboration" before applying the guideline to the facts of the case at hand. *See* Henry P. Monaghan, *Constitutional Fact Review*, 85 Colum. L. Rev. 229, 236–37 (1985). That occurs when, in the course of rendering its decision, the district court formulates or adopts a generalized rule that will apply to an entire class of cases, not just to the case at hand. We will review the district court's formulation or adoption of such rules *de novo*, because any error in formulating or adopting a rule of general application necessarily results in a failure to identify the correct legal standard.

We can offer a few examples of the sorts of generalized rules that district courts have formulated in the course of applying particular provisions of the Guidelines, which we have then reviewed *de novo*. In *United States v. Latimer*, 991 F.2d 1509 (9th Cir. 1993), the district court decided that, as used in the career offender guideline, "incarceration" includes confinement in a community treatment center. *Id.* at 1510–11. In *United States v. O'Brien*, 50 F.3d 751 (9th Cir. 1995), the district court held that the Guidelines' vulnerable-victim enhancement applies regardless of whether the defendant specifically targeted the victims because they were vulnerable. *Id.* at 756. And in *United States v. Jennings*, 439 F.3d 604 (9th Cir. 2006), the district court concluded that the statement "I have a gun," when made during the course of a robbery without anything more, is insufficient as a matter of law to trigger the Guidelines' threat-of-death enhancement. *Id.* at 607–08. The rules formulated by the district courts in each of these cases were rules of general application not limited to the specific facts of the cases before them. We properly reviewed the rule-formulation aspect of the district

courts' decisions *de novo* as part of the inquiry into whether the courts had correctly interpreted the Guidelines and thus identified the correct legal standard.  When, in the course of rendering its decision, the district court formulates or adopts a broad general rule—such as deciding that confinement in a community treatment center is always or never incarceration—*de novo* review of that aspect of the decision is appropriate.

We can now shift to the component of the district court's decision at issue in this appeal: the decision to apply (or not apply) a particular guideline to the facts of a given case. Guideline-application decisions, in the sense we refer to them here, arise only after the district court has identified the correct legal standard and properly found the relevant historical facts.  At that point, there is often room for judgment in deciding whether the specific constellation of facts at issue meets the governing legal standard.  As is true in other contexts, the more general the standard set by the Guidelines, "the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); *see also* Monaghan, *supra*, 85 Colum. L. Rev. at 236 ("The more general the rule, the larger the domain for judgment.").  Under the standard of review we adopt today, this last component of the district court's decision—deciding whether a specific set of facts satisfies the correctly identified legal standard—will generally be subject to review for abuse of discretion.

B

Having clarified what we mean by guideline-application decisions, we can explain why we believe such decisions should be reviewed deferentially rather than *de novo*.

In deciding which standard of review should govern, the most important consideration is whether district courts or courts of appeals are better situated to make guideline-application decisions in the first instance. *See Miller v. Fenton*, 474 U.S. 104, 114 (1985). If district courts are better situated to do so, and we believe they are, then adopting a deferential standard of review is the most prudent course. That conclusion is supported by *Buford v. United States*, 532 U.S. 59 (2001), which held that one particular guideline-application decision—deciding whether two prior convictions are "related" for purposes of the career offender guideline—should be reviewed deferentially on appeal. *Id*. at 60. We think the Court's reasoning in *Buford* applies with equal force to guideline-application decisions more generally.

The defendant in *Buford* pleaded guilty to armed robbery and faced sentencing under the career offender provisions of the Guidelines, which apply if the defendant has at least two prior convictions for violent or drug-related felonies. U.S.S.G. § 4B1.1(a). The Guidelines provided that if prior convictions were "related" to one another, they would be treated as a single conviction for purposes of the career offender guideline. *Buford*, 532 U.S. at 60–61. The accompanying commentary stated that convictions would be deemed "related" if they were consolidated for sentencing. *Id*. at 61. The Seventh Circuit, the jurisdiction in which the case arose, had established a specific standard for determining whether prior convictions were consolidated for sentencing called "functional consolidation." *Id*. The defendant did not dispute that the district court had identified the correct legal standard—the Seventh Circuit's "functional consolidation" standard. Nor did she contest any of the relevant historical facts. She challenged only the district

court's application of the governing legal standard to the facts of her case.  *Id.* at 63.

The Supreme Court held that the district court's consolidation determination—an "application of the Guidelines to the facts"—should be reviewed deferentially on appeal rather than *de novo*.  *Id.*  That rule made sense, the Court reasoned, because "the district court is in a better position than the appellate court to decide whether a particular set of individual circumstances demonstrates 'functional consolidation.'"  *Id.* at 64.  District courts make far more functional consolidation determinations than appellate courts do and thus are likely to be more familiar with the nuts and bolts that go into making such determinations.  And deciding whether the standard for functional consolidation has been satisfied "depend[s] heavily upon an understanding of the significance of case-specific details," a matter over which district courts again have an institutional advantage.  *Id.* at 65.

The Court recognized that adopting a deferential standard of review would sacrifice a measure of uniformity in application of the career offender guideline.  But the Court concluded that concerns with ensuring uniformity, which ordinarily weigh in favor of *de novo* review, did not carry significant weight in this context.  The guideline-application aspect of the district court's decision did not involve establishment of a rule of general application; it involved only an issue that "grows out of, and is bounded by, case-specific detailed factual circumstances."  *Id.*  Fact-bound determinations of that sort limit the uniformity-producing value of *de novo* appellate review.  *Id.* at 65–66.  (The Court has elsewhere noted that "[f]act-bound resolutions cannot be made uniform through appellate review, de novo or

otherwise." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (internal quotation marks omitted).) And to the extent greater uniformity is necessary, the Court stated, the Sentencing Commission can provide it by making adjustments to the Guidelines or the accompanying commentary. *Buford*, 532 U.S. at 66.[3]

The Court's reasoning in *Buford*, although offered with respect to one guideline-application decision in particular, extends in our view to guideline-application decisions more generally. District courts are better situated than appellate courts to make the fact-specific determinations inherent in virtually all guideline-application decisions. District courts make far more guideline-application decisions of all sorts, *see Koon v. United States*, 518 U.S. 81, 98 (1996), and thus are likely to be more familiar with the nuances that go into applying Guidelines provisions across the board. Guideline-application decisions, as we have defined them, almost always "depen[d] heavily upon an understanding of the significance of case-specific details," *Buford*, 532 U.S. at 65, because once the district court has identified the correct legal standard and properly found the relevant historical facts, all that remains is the fact-bound judgment as to whether a

---

[3] We are aware that *Buford* relied in part on 18 U.S.C. § 3742(e), which states that courts of appeals "shall give due deference to the district court's application of the guidelines to the facts." The circuits are divided on whether the "due deference" provision of § 3742(e) survived the Supreme Court's subsequent decision in *United States v. Booker*, 543 U.S. 220, 259 (2005). *See, e.g.*, *United States v. Richards*, 674 F.3d 215, 219 n.2 (3d Cir. 2012) (holding that § 3742(e)'s "due deference" provision survives *Booker*); *United States v. Lopez-Urbina*, 434 F.3d 750, 763 n.1 (5th Cir. 2005) (holding that it does not). Because we conclude that guideline-application decisions should be reviewed deferentially anyway, we need not decide which side of the circuit split to join.

specific set of facts satisfies the governing legal standard. In the Sentencing Guidelines context in particular, that is a judgment district courts are uniquely qualified to make. Each guideline-application decision is ultimately geared toward assessing whether the defendant before the court should be viewed as more or less culpable than other offenders in a given class. In light of their experience sentencing defendants on a day-in-and-day-out basis, district courts possess an institutional advantage over appellate courts in making such culpability assessments. *See Koon*, 518 U.S. at 98.

Finally, the case-specific determinations inherent in guideline-application decisions have limited precedential value, a factor that ordinarily cuts against requiring *de novo* appellate review. *See Thompson v. Keohane*, 516 U.S. 99, 114 & n.14 (1995). Independent review of fact-bound determinations seldom yields an adequate return on the investment of appellate resources required, because such review will generally "fail to produce the normal law-clarifying benefits that come from an appellate decision on a question of law." *Pierce v. Underwood*, 487 U.S. 552, 561 (1988).

Adopting abuse of discretion as the standard of review for guideline-application decisions will not result in a dramatic change in our circuit's law. As noted earlier, in many of the cases in which we stated that the district court's "application" of the Guidelines would be reviewed *de novo*, what we actually reviewed was whether the district court had identified the correct legal standard. *De novo* review will continue to apply in such cases under the rule we adopt today. And while some of our decisions have classified particular guideline-application decisions as "factual" determinations

subject to clear error review, *see, e.g.*, *United States v. Hurtado*, 760 F.3d 1065, 1068 (9th Cir. 2014); *United States v. Miguel*, 368 F.3d 1150, 1156 (9th Cir. 2004), those cases would not come out any differently. The guideline-application determinations in those cases would now be reviewed for abuse of discretion rather than clear error, but in this context the two standards are functionally the same. *See Cooter & Gell*, 496 U.S. at 401.

The general rule we have established is subject to a proviso, as most general rules are. Guideline-application decisions should almost always be reviewed deferentially for abuse of discretion, but there is at least one situation in which *de novo* review is appropriate: determining whether a defendant's prior conviction is for a "crime of violence," as required under some provisions of the Guidelines. *See, e.g.*, U.S.S.G. §§ 2L1.2(b)(1)(A)(ii), 2S1.1(b)(1)(B)(ii). We have consistently held that such determinations are reviewed *de novo*, *see, e.g.*, *United States v. Grajeda*, 581 F.3d 1186, 1188 (9th Cir. 2009), and we see no reason to change that rule, even if we view the crime-of-violence determination as a guideline-application decision. Viewed from that perspective, the Guidelines provide a definition of "crime of violence" and the categorical approach used to make that determination is now well settled, so the correct legal standard will not be in dispute. All the district court must decide is whether a particular conviction satisfies the standard. But the categorical approach requires the crime-of-violence determination to be made on a categorical basis—either all convictions under a particular statute qualify or none do. *See Descamps v. United States*, 133 S. Ct. 2276, 2287 (2013). Nothing turns on the particulars of the defendant's own prior offense. In that sense, determining whether a particular conviction qualifies as a crime of

violence is akin to formulating a rule of general application, a matter properly reviewed *de novo*. We need not determine at this juncture whether there are any other limited exceptions to the general rule that guideline-application decisions are reviewed for abuse of discretion.

### III

The resolution of this appeal is straightforward under the standard of review discussed above. We review *de novo* whether the district court identified the correct legal standard, and we conclude that it did. The court expressly referred to the applicable provision of the Guidelines, § 2L1.1(b)(7)(A), which establishes the governing legal standard—"bodily injury" sustained as a result of the offense. The district court did not, it is true, make an explicit reference to § 1B1.1, whose commentary supplies the definition of "bodily injury," or to the terms used in that definition: "any significant injury," an injury that is "painful and obvious," an injury that is "of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, comment. n.1(B). As a matter of best practices, district courts should make explicit reference to the section number of the applicable Guidelines provision or alternatively use the language of the provision in rendering their decisions. That is the simplest way to ensure that the record shows the court had in mind the correct legal standard. But absent some indication that the district court had in mind a different definition of "bodily injury," and here there is none, we will not assume that the court applied the wrong legal standard when assessing the injuries sustained by the passenger in Gasca-Ruiz's car.

In the course of applying the legal standard established by § 2L1.1(b)(7)(A) to the facts of this case, the district court did

not formulate any rules of general application. The court merely explained why, in its judgment, the specific set of facts involved here satisfied the legal standard for "bodily injury." All that remains, then, is for us to determine whether the district court abused its discretion in making that judgment. (We would ordinarily review the district court's factual findings for clear error, but in this case the facts were undisputed, so there is nothing for us to review on that front.) The court abused its discretion only if its conclusion that the passenger in the trunk sustained bodily injury is "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

The district court did not abuse its discretion in concluding that the standard for bodily injury had been met. The passenger in the trunk sustained mild lacerations to his fingers while trying to escape and a minor burn on his forearm from contact with the overheated trunk compartment. The inference that the passenger's injuries were painful and obvious is supported by facts in the record. The passenger screamed that it was too hot inside the trunk and that he was getting burned. Those facts support the inference that the burn, at least, was painful. And the fact that both the burn and the lacerations were noticed by the officers on the scene supports the inference that the injuries were obvious. Moreover, the fact that the officers offered the passenger medical attention after treating the injuries as best they could at the Border Patrol station supports the inference that the injuries were of a type for which medical attention would ordinarily be sought. That the passenger declined, for whatever reason, to receive medical attention does not render illogical or implausible the conclusion that the injuries were

of a type for which one *ordinarily* would seek medical treatment.

>    **AFFIRMED**.

---

HURWITZ, Circuit Judge, with whom FLETCHER, Circuit Judge, joins, concurring in part and concurring in the result:

As the court today correctly notes, "[i]n most cases, the standard of review does not affect the outcome." That is true here. The district court found that the injuries suffered by the victim—"several lacerations . . . and a small burn"—warranted imposition of the bodily injury enhancement in U.S. Sentencing Guidelines Manual § 2L1.1(b)(7)(A). Whether reviewed de novo or with deference, the district court's determination was plainly correct. *See* U.S.S.G. § 1B1.1 cmt. n.1(B) (defining bodily injury as any significant injury). I would therefore leave for another day, and in a case where it matters to the outcome, the interesting issue of the appropriate standard of review.