
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-50042 |
| Plaintiff-Appellee, | D.C. No. 3:16-cr-02166-BTM-1 |
| v. | |
| CARLOS TIZNADO-VALENZUELA, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Barry Ted Moskowitz, Chief Judge, Presiding

Argued and Submitted March 9, 2018
Pasadena, California

Before: GOULD and MURGUIA, Circuit Judges, and ZOUHARY,** District Judge.

Defendant Carlos Tiznado-Valenzuela appeals the twenty-four month prison

sentence and three-year supervised release term he received from the district court

after pleading guilty to smuggling aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(i)

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

and (v)(II).  This Court has jurisdiction under 18 U.S.C. § 3742.  After reviewing the district court identification of the correct legal standard *de novo*, factual findings for clear error, and application of the Sentencing Guidelines for abuse of discretion, *see United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc), we affirm.

1.      Defendant first challenges the enhancement of his sentence under U.S.S.G. § 2L1.1(b)(6).  Section 2L1.1(b)(6) provides for an upward adjustment if an alien smuggling offense "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person."  Although Section 2L1.1 does not define recklessness, it has been interpreted as referring to "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." *United States v. Rodriguez-Cruz*, 255 F.3d 1054, 1059 (9th Cir. 2001) (citation omitted).  Defendant argues the district court erred in enhancing his sentence under this provision by: (1) applying a strict liability standard; (2) drawing conclusions that were not reasonably supported by facts in the record; and (3) creating an unwarranted sentence disparity between him and his co-defendant.  We disagree.

"[T]o determine whether the district court identified the correct legal standard, we review whether the court selected the right Guidelines provision in the first instance and whether the court correctly interpreted the meaning of that provision." *Gasca-Ruiz*, 852 F.3d at 1170. Usually, the district court "need[s] to do little more than consult the text of the applicable guideline and its accompanying commentary." *Id.* at 1171. If it does, "we will not assume that the court applied the wrong legal standard" absent "some indication" that the district court had in mind a different standard. *Id.* at 1174–75.

During the sentencing hearing, the district court repeatedly referenced Section 2L1.1(b)(6) and its accompanying commentary. For example, the district court observed that the "uncontested statements" in the Presentence Report (PSR) "support [the enhancement] . . . much more so than transporting someone in the trunk of a car," a clear reference to examples of reckless conduct provided in the commentary. *See* U.S.S.G. § 2L1.1 cmt. n.3. The district court also noted that Defendant "was the leader of the group" and "specifically created the risk by undertaking this trek . . . without making sure that they were adequately provisioned." The hearing transcript reflects the district court properly considered the risk to the smuggled aliens, Defendant's awareness of that risk, and his role in creating it.

3

Further, the district court did not abuse its discretion in applying Section 2L1.1(b)(6) to the facts of this case. The party seeking to adjust an offense level generally must establish the adjustment is merited by a preponderance of the evidence. *See United States v. Gonzalez*, 492 F.3d 1031, 1039 (9th Cir. 2007). But when a sentencing factor has "an extremely disproportionate effect" on the sentence, the district court must find the elements are met by clear and convincing evidence. *Id.* (citation omitted). Here, the district court did not identify the evidentiary standard it applied, and neither party argued below or in the briefs that the district court applied the wrong standard. During oral argument, the parties agreed that the clear and convincing evidence standard applies. Regardless of which standard applies, the facts in the PSR are sufficient to support the district court conclusion. *See United States v. Romero-Rendon*, 220 F.3d 1159, 1165 (9th Cir. 2000).

First, the facts in the PSR establish the risks created by the smuggling offense fell within the "wide variety of conduct" covered by Section 2L1.1(b)(6). *See* U.S.S.G. § 2L1.1 cmt. n.3. The Guidelines commentary explains that reckless conduct includes "guiding persons through, or abandoning persons in, a dangerous or remote geographic area without adequate food, water, clothing, or protection from the elements." *Id.* Here, Defendant guided aliens through the mountains in the extreme heat of summer without sufficient food and water, causing several participants to

4

"fear[] for their lives." The risks created by the incident were exactly the kind the Guidelines were designed to address: "death, injury, starvation, dehydration, or exposure that aliens potentially face when transported through dangerous or remote geographical areas, *e.g.*, along the southern border of the United States." U.S.S.G. supp. to app. C, amend. 785. Further, the district court did not apply the enhancement because it found hiking in the region to be "inherently dangerous," but because of additional factors such as the length of the journey, the temperature, the time of year, and whether the aliens were provided adequate food and water. *See id.*

Second, the facts in the PSR show Defendant was aware of, and can be held accountable for creating, those risks. This was not his first smuggling expedition, or even his first unsuccessful one. For example, mere weeks before the charged incident, Defendant attempted to guide a different group of aliens across the mountains. The group ran into several challenges, putting Defendant on notice of the physical demands of the journey and the importance of being adequately provisioned. One member of the group "was unable to keep up," and asked to be left behind. He was eventually found dead. And like the charged incident, that group too ran out of food and water.

Further, because Defendant acted as a foot guide during the charged incident, the district court logically concluded that he was a "leader of the group" and could be

5

held responsible for the group's unpreparedness. Based on his status and prior experiences, Defendant could have "urged the [aliens] to obtain adequate provisions," or to use the provided provisions appropriately. *See Rodriguez-Cruz*, 255 F.3d at 1059. If they did not comply, he "could . . . have refused to go." *See id.*

Considering all of these facts, the district court's application of Section 2L1.1(b)(6) was not "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *See Gasca-Ruiz*, 852 F.3d at 1175 (citation omitted).

Nor did the district court create an "unwarranted" sentence disparity between Defendant and his co-defendant. *See* 18 U.S.C. § 3553(a)(6). Nothing in the record suggests his co-defendant had similar prior smuggling experiences. Thus, the evidence that the co-defendant acted recklessly was not as strong. As the district court noted, the earlier sentencing of the co-defendant was based on his record. *See Gall v. United States*, 552 U.S. 38, 55 (2007) ("[I]t is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated.") (emphasis in original).

2. Defendant next challenges the decision to aggregate the number of smuggled aliens from prior incidents as relevant conduct under U.S.S.G. § 1B1.3.

This resulted in a three-level increase under U.S.S.G. § 2L1.1(b)(2). Because this Court concludes the district court did not err in applying the substantial risk enhancement, this Court need not address this challenge. Regardless of the district court's enhancement under Section 2L1.1(b)(2), Defendant's offense level would increase to 18 under Section 2L1.1(b)(6). Thus, the enhancement did not impact his calculated Guidelines range.

3. Defendant's final challenge is that the three-year term of supervised release is procedurally and substantively unreasonable because it defies the policy outlined in U.S.S.G. § 5D1.1(c). Under Section 5D1.1(c), a court "ordinarily should not impose a term of supervised release" when the defendant is a deportable alien "who likely will be deported after imprisonment." But a court should "consider" imposing supervised release "if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." U.S.S.G. § 5D1.1 cmt. n.5. A district court can satisfy Section 5D1.1(c) without explicitly referring to that Guideline so long as the court provides a "specific and particularized explanation" that an added measure of deterrence is necessary. *See United States v. Valdavinos-Torres*, 704 F.3d 679, 693 (9th Cir. 2012).

Turning first to Defendant's procedural challenge, "[i]n order for an objection to preserve a sentencing issue on appeal, it must have a specific substantive basis."

7

*United States v. Grissom*, 525 F.3d 691, 694 (9th Cir. 2008); *see also* Fed. R. Crim. P. 51(b). "This standard is not met when [a party] lodges a general objection to the court's calculation of the defendant's sentencing offense levels, then on appeal asserts specific grounds of error." *Grissom*, 525 F.3d at 694. Here, Defendant's counsel made a general procedural objection at the close of the sentencing hearing. Nothing in the record suggests the objection was based on the district court decision to impose a term of supervised release, much less the court's failure to adequately explain that decision. Thus, we review for plain error.

To establish plain error, Defendant must show (1) the proceedings below involved error, (2) the error is plain, and (3) the error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732–35 (1993). Defendant's challenge fails under the third prong. Regardless of whether the district court explanation was sufficiently "particularized" to satisfy Section 5D1.1(c), it did not affect Defendant's substantive rights. Considering the district court's discussion of his repeated behavior and "the need to deter him and others," it is clear the outcome would be the same if this matter were returned to the district court for further explanation. *See United States v. Dallman*, 533 F.3d 755, 761–62 (9th Cir. 2008). The argument that the district court findings are insufficient because they focus on the need to deter alien smuggling, rather than illegal reentry, is meritless. By repeatedly attempting to

smuggle aliens into the United States, Defendant was repeatedly attempting to illegally enter the United States. And as a result, he has been repeatedly deported.

We review the substantive reasonableness of Defendant's sentence for abuse of discretion. *United States v. Autery*, 555 F.3d 864, 871 (9th Cir. 2009). We have "upheld as substantively reasonable terms of supervised release for other defendants who were to be removed at the end of their custodial sentence." *United States v. Castro-Verdugo*, 750 F.3d 1065, 1072 (9th Cir. 2014) (citing *Valdavinos-Torres*, 704 F.3d at 692–93). Further, the three-year term of supervised relief is consistent with U.S.S.G. §§ 5D1.1(a) and 5D1.2(a)(2). Thus, the district court decision was not unreasonable and was within its discretion.

**AFFIRMED.**