**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 4 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-4187 |
| Plaintiff - Appellee, | D.C. No. 4:23-cr-01101-SHR-JR |
| v. | |
| MISSAEL ARMANDO TARACENA-ELIAS, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Scott H. Rash, District Judge, Presiding

Argued and Submitted September 15, 2025
Phoenix, Arizona

Before: COLLINS, MENDOZA, and DESAI, Circuit Judges.

Defendant Missael Armando Taracena-Elias appeals his 48-month sentence, which was imposed after he pleaded guilty to one count of conspiring to transport for profit aliens who are unlawfully present in the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(ii), and 1324(a)(1)(B)(i). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm.

In calculating its recommended sentencing guidelines range in this case, the Probation Office rejected the Government's argument that a 10-level increase in

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

the offense level should be imposed under U.S.S.G. § 2L1.1(b)(7)(D). That section states that, in calculating the offense level for a violation of § 1324(a), "[i]f any person died or sustained bodily injury, increase the offense level according to the seriousness of the injury," and, in the case of "[d]eath," "add 10 levels." U.S.S.G. § 2L1.1(b)(7)(D). The Probation Office acknowledged that, on March 2, 2023, Taracena-Elias was a passenger in a vehicle that was transporting aliens who were unlawfully present in the United States near Why, Arizona, when that vehicle collided with another vehicle, resulting in the deaths of four people, including one of the aliens being transported and all three of the occupants of the other vehicle. In the Probation Office's view, the requisite causal connection to apply the 10-level enhancement had not been shown because there was no "clear and convincing evidence" that it was "reasonably foreseeable [that] the offense would result in the death of any person based on reckless or dangerous conduct by any of the participants."

The Government filed a written objection to the Probation Office's refusal to apply the 10-level enhancement. The district court specifically noted that the Probation Office's application of a "clear and convincing evidence" standard was based on caselaw that had since been overruled by *United States v. Lucas*, 101 F.4th 1158, 1163 (9th Cir. 2024) (en banc). The court explained its disagreement with the Probation Office's recommendation as follows:

> I disagree. The wrong standard was used. Pursuant to the new Ninth Circuit case o[f] *United States v. Lucas*, it's no longer clear and convincing evidence on that matter, it is preponderance of the evidence. So, therefore, I'm going to sustain the objection and apply the appropriate total offense level.

As a result, the offense level was 25, the criminal history category was "I," and the guidelines sentencing range was 57–71 months. *See* U.S.S.G., Ch. 5, Part A (Sentencing Table).

Taracena-Elias contends on appeal that the district court erred in applying the 10-level enhancement. Given that Taracena-Elias was not the driver of the vehicle at the time of the crash, we begin by considering the Guidelines' rules for assessing the "relevant conduct" on which a defendant's sentence should be based.

Under § 1B1.3(a)(1)(B), the application of specific offender characteristics such as the 10-level enhancement "shall be determined" based on, "in a case of a jointly undertaken criminal activity . . ., all acts and omissions of others" that, *inter alia*, "occurred during the commission of the offense of conviction" and that were "(i) within the scope of the jointly undertaken criminal activity"; "(ii) in furtherance of that criminal activity"; and "(iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). In addition, § 1B1.3(a)(3) further states that the application of enhancements shall also be based on "all harm that resulted from the acts and omissions specified in subsection[] (a)(1) . . . ." *Id.* § 1B1.3(a)(3). There is no dispute here that the

3

driver's "acts and omissions" as he was driving the aliens all occurred during the conspiracy that is the offense of conviction, were within the scope of that conspiracy, and were in furtherance of that conspiracy. The remaining questions are (1) whether the driver's negligent "acts and omissions" were "reasonably foreseeable in connection with that criminal activity"; and (2) whether the "harm"—*i.e.*, the deaths—"resulted" from those "acts and omissions." If the answers to both questions are "yes," then that "harm" would be relevant conduct of Taracena-Elias, and the harm-based enhancement in § 2L1.1(b)(7)(D) would therefore apply by its own terms. *See id.* § 2L1.1(b)(7)(D) (stating that 10 levels should be added "[i]f any person died").

In rejecting the Probation Office's recommendation, the district court faulted the Probation Office for applying the "clear and convincing evidence" standard in concluding that "it was reasonably foreseeable the offense would result in the death of any person based on reckless or dangerous conduct by any of the participants." Applying the "preponderance of the evidence" standard, the district court then rejected the Probation Office's conclusion, meaning that the court necessarily found that the driver's reckless or dangerous conduct *was* foreseeable, as required by the Guidelines.[1] Reviewing the district court's factual findings for

---

[1] To the extent that Taracena-Elias argues that the *deaths* that occurred in this case had to be "reasonably foreseeable," that is not what the Guidelines require. Rather, it suffices if (1) the "*acts and omissions*" of the driver were "reasonably foreseeable" in connection with the alien transportation, U.S.S.G.

clear error, and its application of the Guidelines for abuse of discretion,[2] *see United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc), we uphold the district court's determination on this score.

As summarized in the Presentence Report, to which Taracena-Elias did not object, the local police agency concluded from its investigation that "there was a high probability" that the driver of Taracena-Elias's vehicle had driven through a stop sign at 59 miles per hour, thereby causing the collision. The collision occurred only 15 minutes after the smuggled aliens had been picked up at the agreed-upon location. The police agency also concluded that "driver inattention and possible unfamiliarity with the road" were, collectively, "a possible cause for failing to stop." On this record, we cannot say that the district court clearly erred or abused its discretion in concluding that it was reasonably foreseeable that a driver engaged in alien smuggling on an unfamiliar road in a remote area late at night may negligently, recklessly, or intentionally commit traffic violations, including running a stop sign. *See United States v. Miguel*, 368 F.3d 1150, 1156 (9th Cir. 2004) (affirming that it was reasonably foreseeable under

---

§ 1B1.3(a)(1)(B)(iii) (emphasis added); and (2) the deaths "resulted from" those "acts and omissions," *id*. § 1B1.3(a)(3).

[2] We reject the Government's contention that our review of this issue is only for plain error. At the sentencing hearing, Taracena-Elias's counsel expressly stated that the defense "completely agree[d]" with the Probation Office's "analysis" concerning the 10-level enhancement, thereby preserving his contention that the district court should have followed the substance of that analysis.

§ 1B1.3(a)(1)(B)(iii) that in furtherance of the jointly undertaken smuggling operation, a coconspirator would transport aliens through a dangerously hot desert area en route to the drop-off location where defendant picked them up), *overruled on other grounds by Gasca-Ruiz*, 852 F.3d at 1174.

The remaining question is whether the decedents' deaths "resulted from" the driver's "acts and omissions" within the meaning of § 1B1.3(a)(3). We need not decide what precise standard of causation is required here, because under any conceivable standard, causation was present. *Cf. United States v. Herrera-Rojas*, 243 F.3d 1139, 1144 n.1 (9th Cir. 2001) (assuming that, for the then 8-level enhancement for death to apply under § 2L1.1(b), "the relevant death or injury must be causally connected to dangerous conditions created by the unlawful conduct"). Based on the undisputed facts recounted in the Presentence Report, the accident and accompanying deaths were caused by the driver's actions in going through a stop sign at 59 miles per hour. Because the harm that leads to application of the 10-level enhancement was directly caused by the reasonably foreseeable deficient driving of Taracena-Elias's coconspirator, that harm is "relevant conduct" for Taracena-Elias, and the enhancement was properly applied.

In a footnote, Taracena-Elias briefly contends that the district court's explanation for the sentence was too "cursory" and violated Federal Rule of Criminal Procedure 32(i)(3)(B). *See* FED. R. CRIM. P. 32(i)(3)(B) (stating that the

6

district court "must . . . rule on" "any disputed portion of the presentence report or other controverted matter"). However, after the district court explained its ruling on the disputed enhancement and imposed its sentence, the court specifically asked defense counsel if there was "anything additional" he wanted to raise, and defense counsel responded, "[n]othing from the defense, Your Honor." The Government then asked for clarification concerning a separate point, which the district court provided. Under these circumstances, where the defendant was afforded an opportunity to request a further explanation and failed to do so, our review is only for plain error. *United States v. Montoya*, 82 F.4th 640, 646 (9th Cir. 2023) (en banc). There was none. On the contrary, as our above analysis shows, the district court expressly resolved the parties' dispute on this point, and its explanation was "sufficient[] to permit meaningful appellate review." *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc).

**AFFIRMED.**