**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-5467 |
| *Plaintiff - Appellee*, | D.C. No. 2:22-cr-00608-SPG-1 |
| v. | |
| ISAAC TEKOLA, | ORDER AND AMENDED OPINION |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the Central District of California
Sherilyn Peace Garnett, District Judge, Presiding

Argued and Submitted February 9, 2026
Pasadena, California

Filed March 9, 2026
Amended May 20, 2026

Before: John B. Owens, Lawrence VanDyke, and Holly A.
Thomas, Circuit Judges.

Order;
Opinion by Judge Owens

**SUMMARY**[*]

**Criminal Law**

The panel affirmed Isaac Tekola's sentence for possession with intent to distribute fentanyl, methamphetamine, and Alprazolam in a case in which the district court imposed an enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance.

Commentary to the Sentencing Guidelines instructs that the enhancement applies to a defendant "who knowingly maintains a premises . . . for the purpose of manufacturing or distributing a controlled substance, *including storage of a controlled substance for the purpose of distribution*." U.S.S.G. § 2D1.1(b)(12) cmt. n.17 (emphasis added). "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's *primary or principal uses for the premises*, rather than one of the defendant's incidental or collateral uses for the premises." *Id*. (emphasis added).

Tekola challenged the district court's finding that he maintained his apartment "for the purpose of manufacturing or distributing" drugs, suggesting that because the apartment was his primary residence, drug trafficking was not a "primary or principal" use of the apartment.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel rejected this argument, which runs counter to the history and purpose of § 2D1.1(b)(12). Following sister circuits in affirming the application of the enhancement where a defendant uses his home for substantial drug trafficking activity, the panel held that it was not an abuse of discretion for the district court to determine that drug trafficking was a "primary or principal use" of the residence, even without explicitly comparing the frequency of Tekola's "drug use" to his "residential use" of the property, where overwhelming evidence suggests that Tekola used his apartment as the central hub for his drug-trafficking business.

## COUNSEL

Kellye Ng (argued) and Declan T. Conroy, Assistant United States Attorneys, Violent & Organized Crime and Transnational Organized Crime Sections; Christina T. Shay, Assistant United States Attorney, Chief, Criminal Division; Bilal A. Essayli, United States Attorney, Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Plaintiff-Appellee.

Sonam A. H. Henderson (argued), Deputy Federal Public Defender; Cuauhtémoc Ortega, Federal Public Defender, Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

## ORDER

The opinion filed on March 9, 2026, and reported at *United States v. Tekola*, 169 F.4th 947 (9th Cir. 2026), is hereby amended. The superseding amended opinion will be filed concurrently with this order.

The panel has voted to deny the petition for panel rehearing and the petition for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 40.

The petition for panel rehearing and rehearing en banc is DENIED.

No further petitions for panel rehearing or petitions for rehearing en banc will be entertained.

## OPINION

OWENS, Circuit Judge:

Isaac Tekola appeals from his 105-month sentence for possession with intent to distribute fentanyl, cocaine, methamphetamine, and Alprazolam. Specifically, he argues that the district court erred in imposing a sentencing enhancement for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.  BACKGROUND

### A.  Tekola's Drug Dealing

On September 16, 2022, in Goleta, California, fentanyl killed yet another young person.  Federal agents tracked how the fentanyl reached this victim and determined that Tekola was the ultimate source.  Through interviews and review of messages exchanged online, the agents also learned that Tekola had been selling drugs for years, frequently from his apartment.

A search warrant confirmed their suspicions.  Inside Tekola's apartment, the agents found almost $13,000 in cash, phones, a pay-owe sheet, baggies, a food saver vacuum sealer, and multiple scales with white residue.  Also discovered in his bedroom: 458.1 grams of cocaine, 687 pills containing 72.8 grams of fentanyl, hundreds of counterfeit Adderall pills laced with methamphetamine, and other drugs.  Tekola later admitted that the nearly $13,000 in seized cash came from drug dealing, and that a safe in his bedroom closet was primarily used to store his drugs and drug proceeds.  Tekola's phone also provided a mountain of drug dealing evidence and confirmed that his apartment was the hub of his trafficking operation.  He sometimes concealed narcotics in a shoe outside his apartment's back door, and counseled one customer that "[t]he neighbors [sic] kids are outside so try and be sly lol."

### B.  Indictment, Guilty Plea, and Sentencing

A grand jury indicted Tekola for possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi); cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and Alprazolam, in violation of 21

U.S.C. § 841(a)(1), (b)(2). Tekola, without a plea agreement, pled guilty to all charges.

At sentencing, the district court considered imposing a two-level enhancement under U.S.S.G. § 2D1.1(b)(12), which applies "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." Tekola contended that although he dealt drugs from his apartment, the primary purpose of the apartment was to serve as a residence. He argued that § 2D.1.1(b)(12) was intended only for so-called stash houses, which his apartment was not.

After reviewing the hundreds of messages between Tekola and his extensive customer base, and the commentary supporting the Guideline, the district court concluded that "there is ample, substantial evidence in the record that for the period of time that is relevant to the offenses charged in this case and probably in excess of a year around that time period, Mr. Tekola maintained his residence as a place to sell drugs, a variety of drugs." As a result, the district court determined that § 2D1.1(b)(12) applied, and sentenced Tekola to an above-Guidelines sentence of 105 months, in part due to the dangers inherent in dealing fentanyl.

## II. DISCUSSION

### A. Standard of Review

"[A] district court's application of the Sentencing Guidelines to the facts of a given case should be reviewed for abuse of discretion." *United States v. Gasca-Ruiz*, 852

F.3d 1167, 1170 (9th Cir. 2017) (en banc).[1]  Factual findings are reviewed for clear error.  *See id.*  And only Guideline applications that are "illogical, implausible, or without support in inferences that may be drawn from facts in the record" are an abuse of discretion.  *Id.* at 1175 (quoting *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc)).

### B. The District Court Correctly Applied the § 2D1.1(b)(12) Enhancement

Under U.S.S.G. § 2D1.1(b)(12), a defendant's offense level is increased by two if he "maintained a premises for the purpose of manufacturing or distributing a controlled substance."  Commentary to the Guidelines instructs that the enhancement applies to a defendant "who knowingly maintains a premises . . . for the purpose of manufacturing or distributing a controlled substance, *including storage of a controlled substance for the purpose of distribution*."  U.S.S.G. § 2D1.1(b)(12) cmt. n.17 (emphasis added).  "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's *primary or principal uses for the premises*, rather than one of the

---

[1] Tekola attempts to characterize his appeal as an objection to the district court's interpretation of § 2D1.1(b)(12), which would be reviewed de novo if preserved and for plain error if raised for the first time on appeal.  *See United States v. Herrera*, 974 F.3d 1040, 1045 (9th Cir. 2020).  But he does not dispute that the district court accurately stated the legal standards laid out in § 2D1.1(b)(12) and the commentary.  Rather, he objects to the district court's application of § 2D1.1(b)(12) to the facts of his case.  *See Gasca-Ruiz*, 852 F.3d at 1170 (emphasizing the distinction between "*identifying* the correct legal standard on the one hand, and *applying* that standard to the facts of a given case on the other").  That objection is properly reviewed for abuse of discretion.

defendant's incidental or collateral uses for the premises."
*Id.* (emphasis added).

Tekola challenges the district court's finding that he
maintained his apartment "for the purpose of manufacturing
or distributing" drugs, suggesting that because the apartment
was his primary residence, drug trafficking was not a
"primary or principal" use of the apartment.  We reject this
argument, which runs counter to the purpose of
§ 2D1.1(b)(12), and hold that the district court acted
squarely within its discretion in applying the enhancement.

Some context helps.    Section 2D1.1(b)(12) was
developed in response to the Fair Sentencing Act, where
Congress directed the Sentencing Commission to provide for
an enhancement if "the defendant maintained an
establishment for the manufacture or distribution of a
controlled substance, as generally described in [21 U.S.C.
§ 856]."  Pub. L. No. 111–220, § 6(2).  The statute that
Congress referenced makes it unlawful to "knowingly open,
lease, rent, use, or maintain any place, whether permanently
or temporarily, for the purpose of manufacturing,
distributing, or using any controlled substance."  21 U.S.C.
§ 856(a)(1); *see also United States v. Verners*, 53 F.3d 291,
296 (10th Cir. 1995) (discussing the text and purpose of
§ 856(a)(1)).

As courts including this one have noted, § 856(a)(1)
"was designed to punish those who use their property to run
drug businesses—hence, the more characteristics of a
business that are present, the more likely it is that the
property is being used 'for the purpose of' those drug
activities prohibited by § 856(a)(1)."   *United States v.
Shetler*, 665 F.3d 1150, 1162-63 (9th Cir. 2011) (quoting
*Verners*, 53 F.3d at 296-97).    The statute and the

enhancement were "intended to deter the manufacture and distribution of illegal drugs" in homes "where children are being raised." *United States v. Miller*, 698 F.3d 699, 707 (8th Cir. 2012).

Thus, courts have repeatedly upheld sentencing enhancements under § 2D1.1(b)(12) where defendants regularly used the premises both as a primary residence and for substantial drug trafficking activities. *See, e.g.*, *id.* at 706-07 (applying § 2D1.1(b)(12) where a defendant participated in three controlled drug buys and accepted drug payments at the family home in which she resided with her husband and raised eleven children); *United States v. Flores-Olague*, 717 F.3d 526, 533 (7th Cir. 2013) (applying § 2D1.1(b)(12) where a defendant sold and stored drugs at his home on a daily basis); *United States v. Johnson*, 737 F.3d 444, 448 (6th Cir. 2013) (applying § 2D1.1(b)(12) where a defendant "consistently used space in his home for storing large quantities of drugs"). And, for purposes of § 856(a)(1), we have previously upheld a determination that "one of the primary or principal uses" of a defendant's property was drug manufacture or distribution where the defendant "regularly" manufactured methamphetamine in his garage and "often" hosted gatherings where that methamphetamine may have been consumed. *Shetler*, 665 F.3d at 1163-64.

In light of this guidance from the enhancement's history and purpose, the commentary, and decisions from previous courts, the district court acted well within its discretion in applying the § 2D1.1(b)(12) enhancement. The government pointed to a litany of drug transactions made at Tekola's apartment. A search of the apartment turned up nearly $13,000 in cash; various drug-dealing "tools of the trade" including a pay-owe sheet, baggies, a vacuum sealer, and

scales with white residue; and a large stash of various drugs in his bedroom. *Cf. United States v. Jones*, 778 F.3d 375, 385 (1st Cir. 2015) (considering "the quantity of drugs discovered and the presence of drug paraphernalia or tools of the drug-trafficking trade" in applying § 2D1.1(b)(12)); *Johnson*, 737 F.3d at 447-48 ("The more characteristics of a business that are present in the home—such as tools of the trade . . . the more likely it is that the property is being used for the purpose of [prohibited] drug activities." (alteration and internal quotation marks omitted)). Tekola admitted that the cash found in his home came from drug dealing, that a safe in his bedroom "was primarily used to store his drugs and drug proceeds," and that he typically used his bedroom to break down and package the drugs he sold.

This case does not require us to consider what should happen if a dealer only occasionally stored or distributed drugs from his residence. Tekola's apartment was the hub of his distribution network. It was where he stored his drugs and other tools of the drug-dealing trade, where he processed and recorded the drugs he sold, and a default location where trusted customers picked up drugs. Of course, Tekola also conducted drug deals elsewhere, but that additional trafficking does not change the fact that his apartment was the equivalent of a home office for the illicit drug business he ran. It was not an abuse of discretion for the district court to determine that drug trafficking was a "primary or principal use" of the residence, even without explicitly comparing the frequency of Tekola's "drug use" to his "residential use" of the property. *See Flores-Olague*, 717 F.3d at 532; *Miller*, 698 F.3d at 706-07; *Johnson*, 737 F.3d at 448.

Tekola argues that our decision in *Shetler* forecloses applying § 2D1.1(b)(12) when drug trafficking is merely a

"significant" purpose of a home. In his view, a district court must explicitly compare the defendant's "residential use" against his "drug use" of the premises and find the "drug use" at least as important as the "residential use." But *Shetler* does not bind our interpretation of § 2D1.1(b)(12). In *Shetler*, we determined that under § 856(a)(1), maintaining a home "for the purpose of manufacturing, distributing, or using any controlled substance" means "the manufacture (or distribution or use) of drugs must be at least one of the primary or principal uses to which the house is put." 665 F.3d at 1162 (citation omitted). We reasoned that this formulation "ensures that the statute does not extend beyond its intended coverage so as to encompass 'incidental' drug use, a slip-page that might occur were only 'a *significant* purpose' required." *Id*. (citation omitted). Given the similarities between the statute and the enhancement, *Shetler*'s interpretation of § 856(a)(1) offers some guidance, but does not control our analysis of § 2D1.1(b)(12).

The *Shetler* court's concern that an overbroad interpretation of § 856(a)(1) might "extend beyond its intended coverage so as to encompass 'incidental' drug use" does not apply in the § 2D1.1(b)(12) context. Most obviously, § 856(a)(1) makes it illegal not only to "maintain" a premises for drug purposes, but to "knowingly open, lease, rent, *use*, or maintain" such a place. 21 U.S.C. § 856(a)(1) (emphasis added). And prohibited purposes under the statute are broader, including "manufacturing, distributing, *or using* any controlled substance." *Id.* (emphasis added). By contrast, § 2D1.1(b)(12) is narrower, requiring a defendant to "maintain" a premises for the purpose of "manufacturing or distributing" a controlled substance. Mere "use" is not enough. *Shetler* was concerned with construing a criminal statute so expansively as to sweep

in casual drug users who take a controlled substance anywhere, even once. 665 F.3d at 1162. That simply could not happen under § 2D1.1(b)(12).

In addition, the *Shetler* court described its interpretation of § 856(a)(1) as a saving construction meant to "ensure[ ] that the statute is not unconstitutionally vague." *Id*. But "[b]ecause they merely guide the district courts' discretion, the [Sentencing] Guidelines are not amenable to a vagueness challenge." *Beckles v. United States*, 580 U.S. 256, 265 (2017). The *Shetler* court's concern with unconstitutional vagueness in 21 U.S.C. § 856(a)(1) also does not apply in the § 2D1.1(b)(12) context.

We therefore follow our sister circuits in affirming the application of § 2D1.1(b)(12) where a defendant regularly uses his home for substantial drug trafficking activity. *See Johnson*, 737 F.3d at 448; *Miller*, 698 F.3d at 706-07; *Flores-Olague*, 717 F.3d at 533. Here, overwhelming evidence suggests that Tekola used his apartment as the central hub for his drug-trafficking business, and the district court acted well within its discretion in imposing the § 2D1.1(b)(12) enhancement.

**AFFIRMED.**