**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Robert MARTIN, Defendant–Appellant.**

**No. 96–3717.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1997.

Decided Nov. 13, 1997.

Barry Rand Elden, Chief of Appeals, Virginia M. Kendall (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

James C. Ten Broeck, Jr. (argued), Chicago, IL, for Defendant–Appellant.

Before CUDAHY, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Robert Martin pled guilty to one count of conspiracy to defraud the United States in exchange for the Government's promise to drop eight similar counts pending against him. The district court sentenced Martin to twenty-one months in prison followed by three years of supervised release. In addition, the district court ordered Martin to pay $9,500 in restitution to the Illinois Department of Public Aid—the victim of his fraudulent scheme. Martin takes issue with this final aspect of his punishment. We affirm the district court's order of restitution.

## I. BACKGROUND

Robert Martin admitted that he defrauded the Government of approximately $40,000 in welfare benefits between September 1994 and February 2, 1996. He coordinated a criminal operation in which a group of women, including his co-defendants Stayce Hoggs and LaShaune Lewis, used the names of fictitious mothers and nonexistent dependent children to apply for Aid to Families with Dependent Children (AFDC) and Food Stamp benefits. To facilitate the fraud, Martin supplied the women with forged birth certificates, photo IDs, and social security numbers. He also drove the women to the Illinois Department of Public Aid (IDPA) to apply for the benefits and then to currency exchanges to collect the conspiracy's booty. Finally, after paying the women for their help, Martin sold the food stamps on the street at a discount. Agents of the Social Security Administration put an end to the conspiracy's deceptive operations by arresting Martin and his co-defendants on February 2, 1996.

Martin entered into a plea agreement with the Government, but the parties could not agree on an appropriate amount of restitution. Pursuant to a search warrant, the Government had seized $9,500 from a safety deposit box owned by Martin. After pleading guilty, Martin filed a motion under Fed. R.Crim.P. 41(e) for return of the seized funds; the Government admitted that it had no claim to the money, but it urged the district court to apply the funds toward any

restitution that might be ordered. The district court denied Martin's motion temporarily until his sentencing hearing six days later. Judge Holderman stated his intention to use the intervening time to ascertain from the presentence investigation report Martin's ability to make restitution. This report, expressly relied upon by the district court in the sentencing hearing, stated that Martin had no assets, living expenses, or income, and that he had over $20,000 in credit card debt. Moreover, Martin stated at the hearing that he obtained the $9,500 as cash advances from several credit cards, that his mother was dependent on him, and that he needed the money to buy a house for the two of them. The district court weighed these considerations and ordered that the money should go to the IDPA as partial restitution under the Victim and Witness Protection Act (18 U.S.C. § 3663(a)).

## II. DISCUSSION

Martin presses two points on appeal. He contends that a government agency such as the IDPA is not a "victim" within the scope of the Victim and Witness Protection Act (VWPA). Even if the IDPA is an authorized victim under the statute, Martin argues that we should vacate the district court's order in this case because it does not reflect adequate consideration of Martin's financial situation. Both of these claims lack merit.

### A. Restitution to the Government under the VWPA

Martin urges us to vacate the district court's order of restitution because the IDPA, as a governmental entity, is not a "victim" within the meaning of the VWPA. He waived this issue by failing to raise it at his sentencing hearing. We can review the district court's order, then, only for plain error. *United States v. Simpson,* 8 F.3d 546, 551 (7th Cir.1993) (applying a plain error standard to restitution challenges waived at sentencing hearing).

The Victim Witness and Protection Act of 1982 represents a major milestone in the evolution of victims' rights in the criminal justice system. It is designed to ensure that courts do not relegate victim restitution to

"an occasional afterthought." S. REP. No. 97–532, at 30 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2515, 2536. The Act, its legislative history, and its amendments since 1982 all demonstrate a clarion congressional intent to provide restitution to as many victims and in as many cases as possible. The Act empowers federal courts for the first time to order restitution as more than simply a condition of probation. It proposes an elaborate scheme of damages that courts should consider when making restitution awards, including medical costs, lost income, and property damage. The Senate Report in 1982 refers to two examples of victims—an elderly woman whose purse was stolen and an insurance company that reimbursed a victim's costs—as evidence of the wide scope intended for the term "victim." *See id.* at 30–31, 1982 U.S.C.C.A.N. at 2537; *cf. United States·v. Gibbens,* 25 F.3d 28, 34 (1st Cir. 1994) (holding that a governmental agency can be a victim under the VWPA but interpreting the legislative history to suggest that the "prototypical victim" was a private individual).

The Act defines a victim as "any person directly or proximately harmed by the defendant's criminal conduct." 18 U.S.C. § 3663(a)(2). Furthermore, a 1996 amendment makes full restitution to each victim mandatory and, in cases where criminal defendants cannot pay such costs immediately, instructs district courts to create a manageable schedule of payments. 18 U.S.C. § 3664(f)(1); see also S.Rep. No. 104–179 (1996), reprinted in 1996 U.S.C.C.A.N. 924. The 1996 amendments to the Act also provide tougher enforcement methods to ensure that victims receive their court-ordered restitution. See 18 U.S.C. §§ 3664(f)-(n). This, in short, is not a history marked by steady congressional erosion, but rather by constant expansion of the restitution remedy.

It is against this backdrop of congressional intent and a common sense reading of the statute that federal courts have consistently held that governmental entities can be "victims" under the VWPA. This Court has affirmed a number of restitution orders to government agencies that were "victims" of criminal conduct. *See, e.g., United States v.*

*Emerson,* 128 F.3d 557 (7th Cir.1997) (Postal Service); *United States v. Humphrey,* 34 F.3d 551, 558 (7th Cir.1994) (Medicare); *United States v. Lesperance,* 25 F.3d 553, 558 (7th Cir.1994) (Small Business Administration); *United States v. Fountain,* 768 F.2d 790, 802 (7th Cir.), *modified on other grounds,* 777 F.2d 345 (7th Cir.1985), *and cert. denied,* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986) (Department of Labor); *United States v. Livingston,* 770 F.Supp. 440, 441 (N.D.Ill.1991), *aff'd. without opinion,* 983 F.2d 1073 (7th Cir.1992) (Medicare). As cogently expressed by the *Fountain* court, there is no reason why a government agency, alone among individual and institutional victims, should not recover its losses from criminal conduct absent an explicit statutory directive to that effect. 768 F.2d at 802. The lone case cited by Martin to the contrary held merely that a federal law enforcement agency's investigative costs could not be recouped. *United States v. Daddato,* 996 F.2d 903, 905 (7th Cir.1993). *Daddato* addressed only the question of "when" restitution was appropriate, not "to whom" it could be awarded; consequently, it did not disturb the settled view that the Government could be a victim in those cases in which restitution could be awarded.

Our reading of the VWPA is supported by an unwavering line of precedent from the other federal courts of appeals. *See, e.g., United States v. Vaknin,* 112 F.3d 579, 591 (1st Cir.1997) (FDIC); *Gall v. United States,* 21 F.3d 107, 111 (6th Cir.1994) (stating that the Government may be a victim under appropriate circumstances); *United States v. Gibbens,* 25 F.3d 28, 36 (1st Cir.1994) (stating that the Government may be a victim if its losses were passively, rather than actively, incurred); *Ratliff v. United States,* 999 F.2d 1023, 1027 (6th Cir.1993) (Department of Labor); *United States v. Savoie,* 985 F.2d 612, 619 (1st Cir.1993) (city government); *United States v. Streebing,* 987 F.2d 368, 374 (6th Cir.), *cert. denied,* 508 U.S. 961, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993) (Social Security Administration); *United States v. Clark,* 957 F.2d 248, 253–54 (6th Cir.1992) (FBI); *United States v. Helmsley,* 941 F.2d 71, 101 (2d Cir.1991), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992) (IRS and State of New York); *United States v. Kress,* 944 F.2d 155, 159–60 (3d Cir.1991), *cert. denied,* 502 U.S. 1092, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992) (Department of Defense); *United States v. Smith,* 944 F.2d 618, 621–22 (9th Cir.1991), *cert. denied,* 503 U.S. 951, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992) (Federal Savings & Loan Insurance Corporation); *United States v. Rochester,* 898 F.2d 971, 980 n. 7 (5th Cir.1990) (FSLIC); *United States v. Hand,* 863 F.2d 1100, 1103 (3d Cir.1988) (U.S. Attorney's office); *United States v. Kirkland,* 853 F.2d 1243, 1246 (5th Cir.1988) (Farmers Home Administration); *United States v. Gallup,* 812 F.2d 1271, 1281 (10th Cir.1987) (Department of Housing and Urban Development); *United States v. Sunrhodes,* 831 F.2d 1537, 1545–46 (10th Cir.1987) (Indian Health Service); *United States v. Ruffen,* 780 F.2d 1493, 1496 (9th Cir.), *cert. denied,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 407 (1986) (county social services agency); *United States v. Dudley,* 739 F.2d 175, 175 (4th Cir.1984) (Department of Agriculture). In a recent case involving food stamp fraud analogous to the instant case, the Fifth Circuit had no trouble in awarding restitution to the Department of Agriculture. *United States v. Lewis,* 104 F.3d 690, 693 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1451, 137 L.Ed.2d 556 (1997).

■ Martin cannot refute this overwhelming authority. He notes that, as part of the 1996 amendments to the VWPA, Congress added a new section to the Act that provides an avenue for restitution to specific government agencies in cases lacking identifiable victims:

(c)(1) Notwithstanding any other provision of law (but subject to the provisions of subsections (a)(1)(B)(i)(II) and (ii), when sentencing a defendant convicted of an offense described in section 401, 408(a), 409, 416, 420, or 422(a) of the Controlled Substances Act (21 U.S.C. 841, 848(a), 849, 856, 861, 863)), in which there is no identifiable victim, the court may order that the defendant make restitution in accordance with this subsection.

\* \* \* \* \*

(3) Restitution under this subsection shall be distributed as follows:

(A) 65 percent of the total amount of restitution shall be paid to the State entity designated to administer crime victim assistance in the State in which the crime occurred.

(B) 35 percent of the total amount of restitution shall be paid to the State entity designated to receive Federal substance abuse block grant funds.

18 U.S.C. § 3663(c). Martin asks us to believe that the creation of an unidentifiable victims provision evinces a congressional judgment that the Government cannot be a "victim" under the traditional § 3663(a)(1)(A) standard.

This argument is wholly unpersuasive. Martin would have us create a rule that courts can never restore lost funds to a victimized government agency, but that courts must instead order the defendant to pay restitution to a state-administered victims' assistance fund and a federal drug prevention program. The 1996 amendments are not so counterintuitive. Allowing recovery for unidentifiable victims does nothing to alter the Government's well-established eligibility to receive restitution as a "person" under § 3663(a)(2). *See generally United States v. Lynch,* 699 F.2d 839, 845 (7th Cir. 1982) (noting that governmental bodies are "persons" because they stand in the shoes of the taxpayers). Sections 3663(a) and (c) are not mutually exclusive, and the existence of a new remedy for an unidentifiable victim does not foreclose restitution to an identifiable governmental one. Rather, § 3663(c) is in harmony with the other 1996 amendments that expand the restitution remedy; the new statute allows courts to order restitution even when the damage to individual victims cannot be known.

■ Moreover, Congress did not enact § 3663(c) in order to allow recovery for governmental agencies, so the amendment does not alter prior interpretations of § 3663(a)'s scope. Courts always considered the Government a "victim" under the VWPA and we can presume that Congress was aware of this interpretation when it enacted the 1996 amendments. *See Pierce v. Underwood,* 487 U.S. 552, 567, 108 S.Ct. 2541, 2551, 101 L.Ed.2d 490 (1988) (noting that reenactment of a statutory provision generally includes the settled judicial interpretation of that provision). Indeed, § 3663(c) and its legislative history strongly indicate that the "unidentifiable victim" amendment was designed to compensate local communities for the destruction wrought by drug dealers. *See* 18 U.S.C. § 3663(c)(3)(B) (directing restitution to the designated recipients of federal substance abuse block grant funds); S.REP. No. 104–179, at 30 (1996), *reprinted in* 1996 U.S.C.C.A.N. 924, 942 (Sen. Simon) (explaining that the proposed amendment, which eventually became § 3663(c), "would allow judges to order those convicted of drug trafficking offenses where there is no identifiable victim to pay restitution").

There is no reason to believe, as Martin suggests, that a governmental agency must be an unidentifiable victim under the VWPA; the IDPA was identifiable enough in this case so that Martin knew to drive his co-conspirators to its offices in order to perpetrate a $40,000 fraud and knew that he was stealing money from this agency's budget. This contrasts with the impossible task facing a judge ordered to fashion a restitution order for a drug dealer without any way of knowing the costs exacted by those sales in the relevant community.

*B. Restitution to the Government in this Case*

■ Assuming that the IDPA was eligible to receive restitution, Martin argues that the district court should not have awarded any restitution in light of his difficult financial circumstances. Martin faces an uphill battle. We will vacate an order of restitution if the defendant shows that the district court abused its discretion in determining the defendant's ability to pay or the amount of restitution. *See United States v. Viemont,* 91 F.3d 946, 949 (7th Cir.1996). We will find an abuse of discretion only if it is probable that the district court failed to consider crucial factors relevant to a defendant's ability to make restitution. See 18 U.S.C. § 3663(a)(1)(B); *United States v. Simpson,* 8 F.3d 546, 551 (7th Cir.1993). In making this

determination, a district court need not make explicit findings on each requisite factor in the record, although we have always encouraged comprehensive explanations of sentencing decisions. *See United States v. Boyle,* 10 F.3d 485, 491 (7th Cir.1993); *United States v. Gomer,* 764 F.2d 1221, 1223 (7th Cir.1985). Rather, it is enough that the record shows that the district court had at its disposal sufficient information about the defendant's financial needs. *See United States v. Arvanitis,* 902 F.2d 489, 496 (7th Cir.1990).

There is no indication that the district court abused its discretion in this case. Martin did not challenge the findings regarding his financial resources contained in the presentence investigation report (PSI). Judge Holderman temporarily denied Martin's motion to return the disputed $9,500 pending a review of the PSI. The PSI detailed Martin's credit card debt and other financial problems; Martin did not object to the PSI's statement that his mother was supported by Social Security, which was the only reference in the report to his family's resources because he requested that family members not be interviewed for the PSI. Six days later, at his sentencing hearing, Martin stated to the court that he planned to use the $9,500 to buy a house for himself and his mother. The district court acknowledged that the PSI suggested that Martin was incapable of paying full restitution:

> I do not believe, based upon the information in the presentence investigative report, that Mr. Martin has the ability to pay any fine or any costs of incarceration or supervision. In fact, there's no indication that he has any funds at all beyond that $9500 in cash that the government now holds but belongs to him.

In light of the $40,000 in damages caused by Martin's fraud, though, the court ordered that the seized funds be used for partial restitution. This decision reflected a balanced consideration of Martin's financial needs and the congressional policy of restoring victims of criminal conduct to their previous places whenever possible.

Martin claims that the district court's reliance on the information contained in the PSI gave insufficient consideration to his financial condition. He points to *United States v.*

*Peden,* 872 F.2d 1303, 1311 (7th Cir.1989), in which the court stated in dicta that "the district court judge must conduct a hearing to consider the propriety of the amount of restitution, in addition to determining the defendant's obligations, debts, and ability to pay." This court refined and limited this statement just two weeks later in *United States v. Arvanitis,* 902 F.2d 489, 496 n. 6 (7th Cir.1990), and emphasized that a presentence investigation report alone can provide sufficient information upon which a district court can base its decision to order restitution. *Id.; see also* Viemont, 91 F.3d at 951–52; *United States v. White,* 993 F.2d 147, 151 (7th Cir.1993) ("The PSI provided the requisite financial information."); *United States v. Gomer,* 764 F.2d 1221, 1223 (7th Cir.1985) (determining defendant's ability to pay restitution based on information contained in two presentence reports).

■ Martin stipulated to the amount of loss asserted by the Government and did not object to the PSI's presentation of his financial condition. There was no doubt that Martin understood the importance of objecting to flaws in the PSI; he spent nearly half of the sentencing hearing disputing the PSI's characterization of his prior criminal activity. Martin claims on appeal that the PSI should have included information about his mother's resources. We cannot, however, demand clairvoyance of a district court. If the court did not consider a particular salient fact in ordering restitution, the fault lies with Martin alone for failing to present that information to the district court. *See* 18 U.S.C. § 3664(d) ("The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant."). The district court properly ordered restitution based on the information presented by the parties.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's order of restitution to the Illinois Department of Public Aid.