**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 19-50181 |
| v. | D.C. No. 2:15-cr-00499-JAK-2 |
| JAMES MANUEL HERRERA, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Submitted May 13, 2020*
Pasadena, California

Filed September 9, 2020

Before: Kim McLane Wardlaw, Deborah L. Cook,** and
Danielle J. Hunsaker, Circuit Judges.

Opinion by Judge Hunsaker

---

* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

** The Honorable Deborah L. Cook, Senior United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

**SUMMARY**[***]

**Criminal Law**

The panel affirmed a sentence for mail fraud arising from a lucrative unemployment-fraud scheme from which the defendant and his brother collected millions of dollars.

Reviewing for plain error, the panel held that it was not error for the district court to apply the 18-level enhancement set forth in U.S.S.G. § 2BG1.1(b)(1)(J) for losses exceeding $3.5 million, which was supported by the evidence, despite the district court's misstatement that it was imposing a 16-level enhancement.

The panel held that the district court did not abuse its discretion in imposing a leadership-role enhancement under U.S.S.G. § 3B1.1(b).

Addressing a question of first impression in this circuit, the panel held that state government agencies who suffer losses that are included in the actual loss calculation under U.S.S.G. § 2B1.1(b)(1) are properly counted as victims for purposes of the number-of-victims enhancement in U.S.S.G. § 2B1.1(b)(2)(A)(I). The panel concluded that the district court did not err in applying the enhancement for "10 or more victims" because there can be no doubt that EDD suffered losses, and it is undisputed that if EDD was properly counted as a victim, the enhancement applies.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

David J. Kaloyanides, David J.P. Kaloyanides APLC, Chino, California, for Defendant-Appellant.

Nicola T. Hanna, United States Attorney; L. Ashley Aull, Chief, Criminal Appeals Section; Ranee E. Katzenstein, Chief, Major Frauds Section; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

HUNSAKER, Circuit Judge:

James Herrera pleaded guilty, without a plea agreement, to one count of mail fraud in violation of 18 U.S.C. § 1341. He now challenges the sentence the district court imposed. Specifically, he argues the district court miscalculated the amount-of-loss enhancement and improperly imposed the leadership-role and number-of-victims enhancements. We affirm.

## I.  BACKGROUND

### A.  The Fraudulent Scheme

Herrera and his brother Jack Hessiani developed a lucrative unemployment-fraud scheme from which they collected millions of dollars. Beginning in January 2011, they registered multiple fictitious companies for which they filed wage reports with the California Employment Development Department (EDD), reporting earnings for fictitious employees. The brothers then filed unemployment benefit claims related to the fictitious employees, calculating the amount of benefits due based on the filed wage reports.

To perpetuate their scheme, Herrera and Hessiani recruited participants to pose as "employees." Recruits opened post office mailboxes to receive the unemployment payments, but the brothers kept the mailbox keys to control the incoming funds. Recruits received a portion of the unemployment payments for their participation.

Herrera managed day-to-day operations of the scheme. He communicated with recruits to get their necessary personal information and schedule meets to distribute payments. He taught co-defendant Daniel Ayala-Mora (Ayala-Mora) how to register the fake companies, input wage information into the EDD system, and file unemployment claims.[1] He also gave Ayala-Mora mailbox keys and unemployment debit cards so Ayala-Mora could collect the unemployment funds. Herrera expanded Ayala-Mora's duties as the scheme progressed.

The brothers' luck ran out in May 2014 when EDD received an anonymous complaint through its fraud hotline that launched an investigation into the scheme. Police surveilled the participants, and in May 2015, Ayala-Mora was stopped for running a red light. Officers searched his car and found 34 envelopes containing unemployment statements and benefits for various people. Herrera's house was also searched, and officers found 41 mailbox keys. Shortly thereafter, federal authorities got involved in the investigation, and a federal grand jury indicted Herrera on 17 criminal charges.

---

[1] Ayala-Mora pleaded guilty to his involvement in the scheme pursuant to a plea agreement.

**B. Herrera's Plea and Sentencing**

In January 2019, Herrera pleaded guilty to one count of mail fraud, in violation of 18 U.S.C. § 1341, without having reached a plea agreement with the government. The Presentence Report (PSR) prepared for the district court identified the Sentencing Guidelines' base offense level of 7 for mail fraud, and recommended numerous enhancements. Three are relevant here: (1) an 18-level enhancement for losses exceeding $3.5 million, U.S.S.G. § 2B1.1(b)(1)(J); (2) a 3-level enhancement for having a leadership role in the scheme, U.S.S.G. § 3B1.1(b); and (3) a 2-level enhancement because there were ten or more victims of the scheme, U.S.S.G. § 2B1.1(b)(2)(A)(i). The PSR calculated the total offense level at 31 for a recommended Guidelines range of 108–135 months and recommended a within-Guidelines sentence. The PSR also recommended imposing $4,861,038 in restitution—$3,960,962 payable to EDD and $900,076 payable to the United States Department of the Treasury.

Herrera objected to the PSR. He argued the amount-of-loss enhancement should be 16-levels not 18-levels because the losses were less than $3.5 million. U.S.S.G. § 2B1.1(b)(1)(I). He also argued the leadership-role enhancement was unlawful because his brother was the leader and organizer of the scheme and the evidence did not "support a finding that [he] was any type of manager who directed, instructed, controlled or ordered anyone else to act in any specific way." He conceded, however, that "[a]rguably [he] could be said to have directed or supervised Ayala-Mora." Finally, Herrera argued the number-of-victims enhancement should not have been imposed because EDD was not properly counted as a victim as "it did not suffer any loss itself." While acknowledging EDD paid out

money on fraudulent unemployment claims, Herrera's counsel argued at sentencing:

> that doesn't make [EDD] the victim . . . . The EDD is collecting the money from these individuals through various taxing [sic] and, therefore, is just funneling it out. So I don't think it really constitutes a victim in and of itself . . . . The EDD doesn't have its own money . . . . It's taking it from the taxpayers.

The district court rejected Herrera's arguments. Regarding the amount-of-loss enhancement, the district court concluded:

> I think that – even if I accepted the defendant's figure of approximately $3 million, it doesn't include the federal loss of approximately $900,000, which would make the number more than $3.5 million. So . . . I think that either by applying the more recent evidence, which I think is appropriate, or by not doing so, but applying the federal loss, I think it's correct to apply the *16 levels under 2B1.1(B)(1)(J).*

The guidelines subsection cited by the district court provides for an *18-level* enhancement where losses exceed $3.5 million, not a *16-level* enhancement as the district court stated. *Compare* U.S.S.G. § 2B1.1(B)(1)(J) (imposing an 18-level enhancement for mail fraud offenses when losses exceed $3.5 million), *with* U.S.S.G. § 2B1.1(B)(1)(I) (imposing a 16-level enhancement for mail fraud offenses when losses exceed $1.5 million). But neither party objected to the district court's misstatement.

The district court also found the evidence supported the leadership-role enhancement, noting Herrera's oversight of Ayala-Mora and recruitment of other participants. Finally, the district court imposed the number-of-victims enhancement, concluding that both EDD and the United States Treasury were victims.

Based on its findings, the district court calculated the total offense level as 29 and sentenced Herrera to 84 months. When it announced the sentence, the district court summarized: "The base offense level is 7. The specific offense characteristics increase that by 22 levels. The role in the offense by an additional 3, which gives a subtotal of 32. Reduced by 3 for acceptance of responsibility to 29." The 22-level specific offense enhancement calculation breaks down as follows: an 18-level enhancement for losses greater than $3.5 million, a 2-level number-of-victims enhancement, and a 2-level sophisticated-means enhancement.[2]

The recommended sentence for a level 29 offense with Herrera's criminal history category of I is 87–108 months. U.S.S.G. ch. 5, pt. A. After evaluating the sentencing factors under Section 3553(a), the district court varied below the guideline range and sentenced Herrera to 84 months. The district court also ordered restitution for EDD and the United States Treasury. Herrera appealed the amount-of-loss, leadership-role, and number-of-victims enhancements.

---

[2] Herrera does not challenge the sophisticated-means enhancement on appeal.

## II.  DISCUSSION

### A.  Standards of Review

Plain error review applies to sentencing objections first raised on appeal. *United States v. Wang*, 944 F.3d 1081, 1089 (9th Cir. 2019). For those issues raised to the district court, we review the district court's selection and interpretation of the Sentencing Guidelines de novo and its application of the guidelines to the facts for an abuse of discretion. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc). Only guideline applications that are "illogical, implausible, or without support in inferences that may be drawn from facts in the record" are an abuse of discretion. *Id.* at 1175 (quoting *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc)).

### B.  Amount-of-Loss Enhancement

Herrera did not object below that the district court miscalculated his sentence by applying an 18-level amount-of-loss enhancement, and we review this issue for plain error. *See United States v. Campbell*, 937 F.3d 1254, 1256–57 (9th Cir. 2019) (explaining that a "request to consider a position does not equate to an objection" to the sentence imposed). Thus, we grant relief only if the district court committed an error that is "plain" and "affect[ed] substantial rights." *United States v. Olano*, 507 U.S. 725, 731–32 (1993) (quoting Fed. R. Crim. P. 52(b)). Herrera bears the burden of showing to a reasonable probability that the asserted error adversely affected his sentence. *See Wang*, 944 F.3d at 1089 (citation omitted). Typically, a defendant satisfies this burden "by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder." *Id.* (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347 (2016)). If this burden is satisfied, the court may

exercise its discretion to correct errors that "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1085 (citation and quotation omitted).

Here, the district court merely misstated the amount-of-loss enhancement. After considering the parties' evidence and arguments, the district court found that the losses exceeded $3.5 million. The evidence supports this finding. Losses exceeding $3.5 million merit an 18-level enhancement. U.S.S.G. § 2B1.1(b)(1)(J). The district court cited the correct sentencing provision but incorrectly stated it was imposing a 16-level enhancement. Despite this misstatement, it was not error for the district court to apply the 18-level enhancement.

## C. Leadership-Role Enhancement

Herrera next argues the evidence does not support imposition of a leadership-role enhancement under U.S.S.G. § 3B1.1(b). This enhancement is proper where the preponderance of evidence shows the defendant supervised or exercised some degree of control over at least one participant in an extensive criminal scheme. U.S.S.G. § 3B1.1(b) cmt. n. 2;[3] *see United States v. Gagarin*, 950 F.3d 596, 606–07 (9th Cir. 2020). The factors courts must consider, among others include: (1) authority and control over participants, (2) planning and strategic decision-making power, (3) accomplice recruitment, and (4) overall participation in the scheme. U.S.S.G. § 3B1.1(b) cmt. n. 4.

---

[3] The Sentencing Application Notes serve to interpret and explain the guidelines and are "authoritative unless [they] violate[] the Constitution or a federal statute, or [are] inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Prien-Pinto*, 917 F.3d 1155, 1157 (9th Cir.), *cert. denied*, 140 S. Ct. 172 (2019) (citation and quotation omitted).

This enhancement does not apply to participants who, while "integral to the success of the criminal enterprise," exercised no power to influence or coordinate other participants. *United States v. Doe*, 778 F.3d 814, 825–26 (9th Cir. 2015) (citation and quotation omitted). Nor does it apply if the defendant was a "co-equal conspirator" with the allegedly subordinate participant. *Gagarin*, 950 F.3d at 606–07.

Herrera argues that he was a co-equal participant with Ayala-Mora and exercised no control over other participants. As the district court found, the facts tell a different story. Ayala-Mora stated that Herrera trained him and provided detailed instructions directing his activities. Herrera taught Ayala-Mora how to register companies with EDD, input false wages, and file unemployment claims. Herrera's control over Ayala-Mora was also continuous. For example, Herrera selected the mailbox keys to give to Ayala-Mora each week so Ayala-Mora could pick up unemployment disbursements rather than letting Ayala-Mora manage this activity on his own. While Herrera and Ayala-Mora both took direction from Hessiani, that does not necessitate the conclusion that they were co-equal conspirators. *See id.* at 607 (explaining that two participants taking instructions from a third did not make them "co-equal conspirators" because there may be more than one leader or organizer). Likewise, even though Herrera and Ayala-Mora received equal proceeds from the scheme, that does not negate that Herrera "guided [Ayala-Mora] through actions to further the conspiracy." *Id.* Indeed, Herrera acknowledged "he could be said to have directed or supervised Ayala-Mora."

Herrera's supervision of others was also not limited to Ayala-Mora. Three other participants stated Herrera was their contact within the scheme, filed fraudulent claims for them, controlled their mailboxes, and set up meets to

disburse payments. Herrera also played a significant role in planning and operating the scheme. He formed fictitious companies, opened mailboxes in others' names, received checks and debit cards for fraudulent claimants, and directed fund disbursement. And he recruited new participants.

On this record, we conclude the district court did not abuse its discretion by imposing the leadership-role enhancement. *See id.* at 606. Herrera was a leader within the unemployment-fraud scheme, and he was properly treated as such at sentencing.

### D. Number-of-Victims Enhancement

Finally, Herrera argues the district court erred by counting EDD as a victim for purposes of the number-of-victims enhancement imposed under § 2B1.1(b)(2)(A)(i). Whether the definition of "victim" under § 2B1.1 includes a state government agency is a question of first impression in this circuit that we review de novo.[4] *See Gasca-Ruiz*, 852 F.3d at 1170. To answer this question we begin as we do for all questions of statutory interpretation, by turning to the text. *United States v. Martinez*, 870 F.3d 1163, 1166 (9th Cir. 2017). In interpreting the text, we look at the structure of the guidelines as a whole to understand the provision in context. *See id.*; *Friends of Animals v. U.S. Fish & Wildlife Serv.*, 879 F.3d 1000, 1006 (9th Cir.) ("Interpretation of legal text 'is a holistic endeavor,' and a 'provision that may seem ambiguous in isolation is often clarified by the remainder of the . . . scheme . . . .'" (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988))), *cert. denied sub nom. Friends of Animals v. Fish &*

---

[4] Herrera challenges only EDD being counted as a victim under the § 2B1.1(b)(2)(A)(i) enhancement, not the United States Treasury.

*Wildlife Serv.*, 138 S. Ct. 2628 (2018). For further understanding we may also consider the provision's history, purpose, and the reasons for any relevant amendments. *Martinez*, 870 F.3d at 1166.

### 1.  Text

The Sentencing Guidelines' text is interpreted "using the ordinary tools of statutory interpretation." *Id.* The commentary and Application Notes provide authoritative guidance on understanding the guidelines, so long as the interpretation does not conflict with governing law. *See Stinson v. United States*, 508 U.S. 36, 38 (1993). Canons of statutory construction can also guide the interpretation. *See United States v. Soberanes*, 318 F.3d 959, 963 n.4 (9th Cir. 2003) ("We use traditional canons of statutory construction to interpret the sentencing guidelines.") (citing *United States v. Gonzalez*, 262 F.3d 867, 869 (9th Cir. 2001) (per curiam)).

Section 2B1.1(b)(2)(A)(i) of the guidelines provides a 2-level enhancement for mail fraud offenses "involv[ing] 10 or more victims." As relevant here, the Application Notes for § 2B1.1 define "victim" as "any person who sustained any part of the actual loss determined."[5] U.S.S.G. § 2B1.1 cmt. n.1; *see also United States v. Brown*, 771 F.3d 1149, 1162 (9th Cir. 2014) (counting as victims only those whose losses are included in the loss calculation). The Application Notes further specify that "'Person' includes individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies." U.S.S.G. § 2B1.1 cmt. n.1. This list of entities does not expressly include

---

[5] While not relevant to this appeal, "any individual whose . . . identification was used unlawfully is also a victim." *Id.* § 2B1.1 cmt. n.4(E).

government entities or agencies, but it also does not expressly exclude them. *See id.*

It cannot be disputed that government entities sometimes suffer losses from the types of fraudulent conduct that § 2B1.1 addresses. Indeed, the Application Notes for § 2B1.1 provide specific direction for calculating government loss: "In a case involving government benefits (e.g., grants, loans, entitlement program payments), loss shall be considered to be not less than the value of the benefits obtained by unintended recipients, or diverted to unintended uses, as the case may be." *Id.* § 2B1.1 cmt. n.3(F)(ii). In reference to § 2B1.1, we have previously explained that "[o]nce a loss amount is included in the loss calculation, then the person associated with that loss should also be included in the victim calculation." *United States v. Armstead*, 552 F.3d 769, 783 (9th Cir. 2008). Thus, the question here is whether the definition of "victim" for § 2B1.1, which does not include government entities in its list of various entities that may be counted as victims, must be interpreted to exclude government entities regardless of whether they suffer loss included in the loss calculation.

Traditional statutory interpretation principles hold that where a definitional list designates certain things, "all omissions should be understood as exclusions." *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) (citation and quotation omitted). This would seem to imply that government agencies may be excluded from the number-of-victims enhancement. *See* U.S.S.G. § 2B1.1 cmt. n.1. But an exception to this principle is the "presumption of nonexclusive 'include.'" *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132 (2012). This presumption holds that "the word *include* does not ordinarily introduce an exhaustive list." *Id.* We have

applied this principle in previous cases. *See United States v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005) ("The use of the word 'includes' suggests the list is non-exhaustive rather than exclusive."); *United States v. Hockings*, 129 F.3d 1069, 1071 (9th Cir. 1997) (concluding definitional list using "includes" was "not drafted as an exhaustive list").[6] Because the Application Notes use "include" before introducing the list of entities that are "persons" for purposes of the number-of-victims enhancement, the presumption is that the list is providing only examples from a larger group, of which government agencies may be part. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 132 & n. 1.

### 2.  Context

Viewing § 2B1.1's definition of "victim" in the larger context of the guidelines further supports this conclusion. As mentioned, the Application Notes for § 2B1.1 specifically contemplate that loss can be suffered by government entities. U.S.S.G. § 2B1.1 cmt. n.3(F)(ii). This indicates that government entities are properly considered victims given that "victim" is defined in terms of those who suffer loss. *Id.* § 2B1.1 cmt. n.1.

Other sections of the guidelines (and their accompanying notes) expressly provide that certain enhancements do not apply when "the only victim is an organization, agency, *or the government*." *Id.* § 3A1.2 cmt. n.1 (emphasis added).

---

[6] Indeed, in a recent unpublished decision this court held that "victim," as defined in § 2B1.1 for the number-of-victims enhancement, is not an exhaustive list. *See United States v. Wells*, 804 F. App'x 515, 518 (9th Cir. 2020) ("[T]he district court properly included merchants and payment processors in its count of total victims because the Sentencing Guidelines do not require that the 'victims' be financial institutions for the enhancement to apply.")

The presence of those provision suggests that failing to *exclude* government entities in the definition of "victim" in § 2B1.1 was intentional, and it also indicates that, as a general matter, unless stated otherwise, the government is properly considered a victim for sentencing purposes. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) (noting it is well-accepted that "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute"); *cf. United States v. McDuffy*, 890 F.3d 796, 800 (9th Cir. 2018) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (citation and quotation marks omitted)), *cert. denied*, 139 S. Ct. 845 (2019).

### 3. Amendment History

The history of the number-of-victims enhancement is consistent with, if not also supportive, of this conclusion. Section 2B1.1 was substantially amended in 2001 when the guidelines for theft and fraud crimes were consolidated. U.S.S.G. App. C. at 127–47 (Amend. 617). Prior to 2001, § 2F1.1 addressed fraud-based crimes and provided a 2-level enhancement for schemes that defrauded more than one victim, and § 2B1.1 addressed theft-based crimes and provided enhancements for crimes involving "more than 10, but less than 50, victims" and crimes involving more than 50 victims. *Id.* The notes for § 2F1.1 stated that a "victim" is "the person or entity from which the funds are to come directly." *Id.* App. C. at 138–39 (Amend. 617). The notes for § 2B1.1 included the definition of "victim" currently before the court, including the list of entities that are considered a

"person." *Id.* § 2B1.1 cmt. n.3(A)(ii) (U.S. Sentencing Comm'n 2002).

Construing the definition of "victim" in § 2F1.1, some of our sister circuits determined it included government agencies. *United States v. Reyes*, 908 F.2d 281, 288–89 (8th Cir. 1990); *United States v. Aramony*, 166 F.3d 655, 663 (4th Cir. 1999) (citing *Reyes*). In *Reyes*, not only did the Eighth Circuit hold that government agencies are victims for purposes of the enhancement, but it also held that multiple government agencies with distinct interests are properly counted as separate victims. 908 F.2d at 288–89. In reaching this conclusion, the Eighth Circuit noted that § 2F1.1 defined "victim" broadly to include entities and, like the current language, did not expressly exclude government entities as is found in other provisions in the guidelines. *Id.* at 288 (comparing § 2F.1.1 with § 3A1.2 cmt. n.1).

When the guidelines for fraud crimes were consolidated into § 2B1.1, the enhancement for defrauding more than one victim and the definition of "victim" included in the § 2F1.1 notes were removed, while the number-of-victim enhancements in § 2B1.1 and its definition of "victim" were retained. U.S.S.G. App. C. at 173 (Amend. 617); *see id.* § 2B1.1 cmt. n.3(A)(ii) (U.S. Sentencing Comm'n 2002). In explaining the consolidation, the Commission did not address why the definition in § 2B1.1 was chosen over the definition in § 2F1.1. *Id.* App. C. at 172–82 (Amend. 617).

Two years later, § 2B1.1 and its Application Notes were again amended to incorporate numerous directives from the Sarbanes-Oxley Act of 2002. *Id.* App. C. at 290 (Amend. 647). These amendments included moving the definition of "victim" into the definitions section of the Application Notes, where it is currently located. *Id.* App. C. at 286

(Amend. 647). The language of the definition, however, was not changed. *Id.*

By amending § 2B1.1, including the 2001 consolidation of enhancements for theft and fraud-based crimes, we assume the Sentencing Commission was aware of the prior judicial decisions interpreting "victim" for purposes of the number-of-victims enhancement for fraud-based crimes to include government agencies. *See United States v. Alvarez-Hernandez*, 478 F.3d 1060, 1065–66 (9th Cir. 2007). Moreover, continuing with broad language and structure after amendment indicates the Commission did not intend to draft around the prior judicial interpretations. *See id.* (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85–86 (2006)).

Perhaps it could be argued that the Commission, by deleting the definition of "victim" from § 2F1.1 and retaining the language from § 2B1.1, intended to avoid the circuits' interpretation of "victims" as including government agencies. Yet the Commission frequently references circuit authority interpreting provisions and definitions in explaining its amendments. *See, e.g.*, U.S.S.G. App. C. at 181 (Amend. 617) (explaining that other provisions will retain a definition because "the existing definition has not proven problematic for cases sentenced under these guidelines" and amending to "resolve[ ] a circuit conflict"); *id.* App. C. at 173–82 (Amend. 617) (explaining multiple amendments were intended to resolve circuit splits or nullify specific judicial decisions). The Commission made no such reference to the relevant judicial decisions discussed herein. Thus, it is at least as reasonable, particularly in light of the text and context previously discussed, to infer from the amendment history that the Commission was aware of the prior judicial decisions counting government agencies as

victims for the number-of victims enhancement and did not intend to undermine those decisions. *See Alvarez-Hernandez*, 478 F.3d at 1065–66.

### 4. Comparison to Restitution Statute

Finally, while we recognize that restitution and sentencing serve different purposes, *United States v. Gossi*, 608 F.3d 574, 579–80 (9th Cir. 2010), the definition of "victim" for purposes of ordering restitution as part of sentencing affords persuasive comparison value. The Mandatory Victims Restitution Act (MVRA) defines "victim" to include "any person directly harmed by the defendant's criminal conduct." 18 U.S.C. § 3663A(a)(2). Every circuit that has considered the issue has concluded that government entities can be victims for purposes of restitution. *United States v. Lincoln*, 277 F.3d 1112, 1114 (9th Cir. 2002) (explaining the MVRA "construes the term 'victim' broadly" and includes government agencies (citation and quotation omitted)); *see also United States v. Martin*, 128 F.3d 1188, 1191 (7th Cir. 1997) (listing cases in other circuits and holding that it is a "settled view . . . supported by an unwavering line of precedent from other federal courts of appeals" that government agencies can be victims for restitution). As an arm of the government, an agency "stands in the shoes" of the victims—the taxpayers whose money is lost through fraudulent payments. *See United States v. Ruffen*, 780 F.2d 1493, 1496 (9th Cir. 1986). We see no reason why a government agency should qualify as a victim for restitution but not for a victim-related sentencing enhancement if it otherwise meets the loss definition.

Therefore, for all the reasons discussed, we hold that state government agencies who suffer losses that are included in the actual loss calculation under § 2B1.1(b)(1)

are properly counted as victims for purposes of the number-of-victims enhancement in § 2B1.1(b)(2)(A)(i).

In light of this conclusion, our final question is whether the district court properly counted EDD as a victim in this case. As discussed, EDD is only a victim under the number-of-victims enhancement if it suffers losses that are included in the district court's actual loss calculation. U.S.S.G. § 2B1.1 cmt. n.1; *Armstead*, 552 F.3d at 780–81. There can be no doubt that EDD suffered losses. *See* U.S.S.G. § 2B1.1 cmt. n.3(F)(ii) (explaining that losses can be government benefits paid to unintended recipients). Indeed, Herrera conceded that receiving distributions from tax-paying companies for fictitious employees of fictitious companies that did not pay taxes "result[ed] in a loss to EDD." Moreover, EDD's losses, along with the losses suffered by the United States Treasury, were the only calculations the district court used to determine the amount of actual loss. Thus, because it is undisputed that if EDD was properly counted as a victim, the sentencing enhancement for "10 or more victims" was properly applied, we conclude the district court did not err in applying this enhancement to calculate Herrera's sentence.

## III. CONCLUSION

The district court did not plainly err in calculating the loss-enhancement, nor did it abuse its discretion in applying the leadership-role enhancement. Likewise, the district court correctly applied the number-of-victims enhancement because EDD is properly considered a victim under § 2B1.1(b)(2)(A)(i).

**AFFIRMED.**